PRESTON *v.* AUSTIN.

**1. NEGLIGENCE—TRESPASSERS—DUTY TO KEEP LOOKOUT.**

In an action for personal injuries by a five-year-old boy, evidence that the boy, without being invited, came into defendant's yard while he was preparing his mowing machine to cut grass, that defendant saw the boy go around the house to the back door, but did not see him again until he was injured by the mowing machine in the tall grass which defendant was cutting, *held*, insufficient to impose a duty upon defendant to keep a lookout for the boy the neglect of which would constitute negligence rendering defendant liable.

**2. SAME—ACTIVE NEGLIGENCE—WHEN APPLICABLE.**

Before the principle of active negligence can apply, some duty must rest upon the defendant which is violated by his conduct or act.

Error to Kent; McDonald, J. Submitted April 24, 1919. (Docket No. 58.) Decided May 29, 1919.

Case by Boyd Preston, an infant, by his next friend, against John Austin for personal injuries. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Hatch, McAllister & Raymond,* for appellant.

*Lombard & Hext,* for appellee.

STONE, J. The salient facts in this case are not in dispute. The action was brought to recover damages for injuries which the plaintiff sustained in consequence of the alleged negligence of the defendant in running a mowing machine against the plaintiff, and cutting off his left foot and injuring his right leg on July 7, 1916, the plaintiff, at that time, being five years of age. The plaintiff resided with his parents,

---

Authorities passing on the question of duty of property owner to trespassing child, are collated in a note in 32 L. R. A. (N. S.) 559.

on a farm in Chester township, Ottawa county, opposite the farm upon which the defendant resided, the plaintiff living on the north side of an east and west road, and the defendant living on the south side. On the day of the accident, and about 10 o'clock in the forenoon, the plaintiff went across the road from his home to the farm of defendant, where he met the defendant who was then engaged in the yard in front of the house, fixing a mowing machine which he was about to operate in cutting the grass. The plaintiff sat down by a tree while the defendant was putting the knives in the mower, and some conversation took place between them there. This was in the northeast corner of the space in front of the house and under a large tree just west of the driveway. The whole space in front of the house was a dooryard and the grass was kept mowed, but the space west and north of the house, being about 200 feet east and west and 100 feet north and south, was grown up to timothy grass.

After the defendant was talking with the plaintiff in the front yard, defendant drove his machine over to the northwest corner of the house, while the plaintiff went to the mail box near the gate of his own volition, got the mail and took it around the east side of the house to the back door, on the south side of the house, to defendant's sister. Defendant started to cut the grass around this circuit of about 200 feet by 100 feet, and on the second circuit while driving east about 100 feet east of the west fence and about 15 feet south of the highway, he ran into the plaintiff with the machine and cut off his left foot completely, and injured his right leg. The accident occurred about 11 o'clock in the forenoon, on a bright, clear, sunshiny day. There was no one present at the time of the accident except the plaintiff and the defendant.

The defendant was called for cross-examination un-

der the statute, and was examined at great length in reference to all the facts and circumstances, and photographs of the premises showing the various locations, including the place where the injury occurred, were introduced in evidence. The defendant testified that he did not know the child was in the grass, and did not see him until the machine struck him. The testimony of defendant is too lengthy to be inserted here, but we quote the following:

"*Q.* Now, were you paying any attention to where that little boy was up to the time this accident occurred, were you paying any attention to where he was?

"*A.* I didn't see him after he went into the house.

"*Q.* Well, did you pay any attention to him, to where he was?

"*A.* I see him when he went to the house.

"*Q.* Well, did you pay any more attention to him after that?

"*A.* I didn't see him after that.

"*Q.* You didn't give him any thought did you?

"*A.* I didn't see him till the mower struck him.

"*Q.* Well, now, he didn't go in the house, did he?

"*A.* He went to the door.

"*Q.* Well, did the boy go to the house? Show us where the door is on the house.

"*A.* I couldn't see it plain, there is a kitchen there.

"*Q.* Where is the kitchen door, is it around on the other side of the house?

"*A.* It is on the south side.

"*Q.* Did he go around to the kitchen door?

"*A.* Yes, sir.

"*Q.* He went around to the kitchen door. Well, the door that you come in and out of is right there in front isn't it?

"*A.* Yes, the front door, but he went around to the kitchen door.

"*Q.* You saw him do that, didn't you?

"*A.* Saw him before he went around the corner.

"*Q.* So that you expected him to come out, didn't you?

"*A.* I wasn't looking for him coming back.

"*Q.* Well, he wasn't going in there to stay was he?

"*A.* Well, I didn't know how long he was going to stay.

"*Q.* And you didn't know how soon he was coming out either did you?

"*A.* I didn't know how soon he was coming out.

"*Q.* And you knew that when he went out he would go through that yard didn't you?

"*A.* Yes, straight out to the road.

"*Q.* He would have to go through the yard wouldn't he?

"*A.* Yes, the front yard. * * *

"*Q.* Now, the only excuse that you have for running into that little boy, with your mowing machine that day is the claim that the grass was deep, is that your only excuse?

"*A.* I didn't see the boy.

"*Q.* Have you got any other reason?

"*A.* I didn't see him, I didn't know he was there.

"*Q.* That's the only reason you have got, isn't it? Is that the only reason you have got now?

"*A.* And the grass was tall.

"*Q.* Well, you gave us that, the grass was tall and you didn't see him. Now have you got any other reason?

"*A.* No, sir.

"*Q.* Now, you didn't pay any attention to whether he was there, or whether he wasn't after you started away with your mower, did you?

"*A.* I looked back and see him just before he went around the house.

"*Q.* What did you look back at him for?

"*A.* To see where he was.

"*Q.* Well, that was after you started in from the house wasn't it to mow?

"*A.* Yes, sir.

"*Q.* Now, where were you? Just tell us where you were when you looked back and saw him going to the house.

"*A.* Why, I was right there by the corner, just where I started to mow."

After the plaintiff's testimony was all in, the court directed a verdict and judgment in favor of the de-

fendant upon the ground that under the testimony there was no negligence shown, and that the question of whether the defendant was in the exercise of due care and caution was a question of law and not of fact, under the evidence.

The plaintiff has brought the case here by writ of error, and has assigned the following errors:

"That the court erred in refusing to submit the question of defendant's negligence to the jury, and in directing a verdict of no cause of action, against the plaintiff and in favor of the defendant."

The position of the plaintiff is well expressed in his counsel's brief as follows:

"We contend that under all of the facts and circumstances presented in this case, it was a question for the jury to determine whether, if the defendant was in the exercise of ordinary care, he would have known of the presence of the plaintiff, and that he was bound to use ordinary care to prevent injuring plaintiff by his own active negligence"

—and the following cases are cited and quoted from: *Schmidt* v. *Mining Co.*, 159 Mich. 308, 311; *Verlinde* v. *Railroad Co.*, 165 Mich. 371, 376; and section 188 of Baldwin on Personal Injuries is cited.

Plaintiff's counsel lay much stress upon the claim that the trial court wholly ignored the doctrine of active negligence of the defendant. The record discloses that the trial court held that under the evidence the law did not place upon the defendant the duty to keep a lookout for this plaintiff.

It is the claim of counsel for defendant that under the circumstances disclosed in this record, the defendant was under no legal obligation or duty to keep a lookout for this child in his hay field. It is said that when the plaintiff had, of his own accord, obtained the mail and had come through the gate and was on his way down to the house, the defendant had hitched on

to the machine and was driving diagonally across the dooryard in front of the house to the corner, where he was going to start mowing; that when defendant reached that point he looked around and saw the plaintiff pass out of sight by the southeast corner of the house. This was the last the defendant saw of the boy until he was struck by the machine. It is true that after the plaintiff passed out of sight of the defendant by the east side of the house, he, the defendant, did not look for him again, and gave him no further thought.

It is urged by defendant's counsel that the important points of the situation at the moment of the accident were that the boy had gone out of sight, around the east side of the house, with the mail at the time the defendant started to mow; that defendant did not again see plaintiff, or know of his presence in the grass that was being cut until the machine struck him; that it is not known whether the boy was standing, or sitting down in the grass; and that immediately before the accident the defendant was devoting his attention to his team, and was not looking in the direction where the plaintiff was located, and all thought of the boy had passed from the defendant's mind.

In our opinion the case of *Schmidt* v. *Mining Co.,* *supra,* is not controlling of the instant case. There a miner, injured in a negligent explosion, had applied for work to the defendant's pit boss, who told him to return on a subsequent day, when he again went and made application to the defendant's superintendent who referred him to the pit boss, whom he then attempted to find on defendant's premises, and while waiting in the tipple to see the pit boss the explosion occurred; and it was held to be a question of fact for the jury whether an express or implied invitation to be on the premises might not be inferred from the con-

versation. Under those circumstances it was said that after the owner of the premises is aware of the presence of a trespasser or licensee, or if in the exercise of ordinary care he should know of his presence, it is his duty to use ordinary care to prevent injury to him arising from active negligence. In that case the defendant by its own conduct in requesting the plaintiff to return, and the other circumstances, had created a condition which demanded the exercise of care and attention on the part of the defendant to ascertain and know whether the plaintiff was present or not, and to exercise due care and caution not to injure him by its active negligence. The instant case is clearly distinguished from that case. In this case the defendant had in no way requested, invited or induced the plaintiff to come down into this uncut grass where he was hurt, and had created no obligation or duty on his part to anticipate, expect or keep a lookout for the plaintiff at that point, and we think it follows that if the defendant owed no duty to plaintiff to anticipate, or keep a lookout for him at the point where he was hurt, there can be no liability, as it is not contended that the defendant had actual knowledge of the plaintiff's presence.

In the *Verlinde Case* the presence of the plaintiff was actually known to the defendant. After knowledge of the presence of a trespasser or licensee, or that he is in danger, one must exercise ordinary care and prudence not to cause an injury by one's own affirmative acts.

In our opinion the principle involved in the instant case is more like that in the cases of *Hargreaves* v. *Deacon*, 25 Mich. 1, and *Ryan* v. *Towar*, 128 Mich. 463 (55 L. R. A. 310, 92 Am. St. Rep. 481). See, also, Baldwin on Personal Injuries, §§ 192, 204. The last-named section contains this language:

"An owner of premises has no duty imposed upon

him to guard against trespassers. To make the owner liable there must have been some negligence on his part, subsequent to the trespass, that could have been avoided by the use of ordinary care, after knowledge of the trespasser's presence"—citing, among other cases, *Charlebois* v. *Railroad Co.*, 91 Mich. 59; *Hargreaves* v. *Deacon, supra; Habina* v. *Electric Co.*, 150 Mich. 41 (13 L. R. A. [N. S.] 1126).

We think that before the principle of active negligence can apply, some duty must rest upon the defendant which is violated by his conduct or act. There is no claim that the defendant knew that the plaintiff was down in the grass. From whatever angle we view the case, it ultimately brings us back to the one question: Was there any duty resting on the defendant, under the facts shown in the record, to keep a lookout for this child? We are of the opinion that this question should be answered in the negative.

The judgment below is affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.