[Civ. No. 7329.   Third Dist.   Apr. 30, 1947.]

EDA JOHNSON CLARKE, Respondent, v. JOHN AL-VAREZ HERNANDEZ et al., Defendants; LOUIS GIOVANNINI et al., Appellants.

[Civ. No. 7330.   Third Dist.   Apr. 30, 1947.]

HERBERT C. O. CLARKE, Respondent, v. JOHN AL-VAREZ HERNANDEZ et al., Defendants; LOUIS GIOVANNINI et al., Appellants.

Ray W. Hays, John Langer and J. C. Simpson for Appellants.

C. Ray Robinson, Samuel V. Cornell and Margaret A. Flynn for Respondents.

SCHOTTKY, J. pro tem.—Appellants appeal from adverse judgments in two personal injury actions that were consolidated for trial.

In one of the actions the plaintiff was Eda Johnson Clarke. In the other action the plaintiff was her husband, Herbert C. O. Clarke. Defendants in both actions were these appellants and John Alvarez Hernandez and Jess Gonzales. Each complaint alleged that on May 4, 1944, and at a point on Highway 99 approximately 250 yards south of Grapevine Station in Kern County, defendant Hernandez negligently drove a northbound truck and semi-trailer into collision with a northbound automobile in which plaintiff was riding. Each complaint alleged that at the time of the collision defendant Hernandez was operating the truck and semi-trailer as agent and employee of the other defendants, within the scope of his agency and employment, and with their consent. Mrs. Clarke alleged that all defendants owned the truck and semi-trailer, whereas Mr. Clarke alleged that only defendant Hernandez was the owner thereof.

The answer filed in each action by these appellants was the equivalent of a general denial, with special defenses invoking the doctrines of independent contractor, independent negligence, contributory negligence, and unavoidable accident. The defendants Hernandez and Gonzales were represented by separate counsel, and their answers do not appear in the transcript on this appeal.

The two actions were consolidated for trial. The trial resulted in a nonsuit in favor of defendant Gonzales and a verdict in each action against the other defendants. Mrs. Clarke was awarded damages in the sum of $20,000, and Mr. Clarke was awarded damages in the sum of $40,000, and judgment was entered on each verdict. A motion for new trial was made in each action on the usual statutory grounds, and denied. Notice of appeal was filed by Louis Giovannini, Palmer Powell and W. W. Kelly, individually and as copartners doing business under the firm name and style of Sunrise Produce Company, in each action. Defendant Hernandez has not appealed from the judgment against him.

As reasons for the reversal of the judgments, appellants urge that: 1. The evidence is insufficient as a matter of law to support the judgments for respondents; 2. The jury was misdirected to the prejudice of appellants; and 3. The damage awards are excessive as a matter of law.

Before proceeding to discuss these contentions we shall give a brief summary of the factual situation as shown by the record.

On May 4, 1944, about 6:30 p. m., the plaintiffs were occupants of a Buick automobile which plaintiff Herbert Clarke was driving north on Highway 99 from Los Angeles. It was a clear bright afternoon. Visibility was perfect. The highway was dry. As the automobile was descending the grade toward Grapevine Station in Kern County at a proper rate of speed and in a proper position on its proper side of the highway, a northbound truck and semi-trailer owned and driven by defendant Hernandez and loaded with six hundred 50-pound sacks of onions belonging to appellants crashed into the rear of the automobile and plaintiffs were injured. The explanation of the accident given by Hernandez was that the brakes would not hold as he was descending the grade and he lost control of the truck and semi-trailer.

The record shows that appellants were wholesale produce dealers who maintained a place of business at San Francisco, and who also maintained a packing shed at Coachella in San Bernardino County under the supervision of appellant Kelly. They did not own any trucks and their produce was hauled from Coachella or other points in the Imperial Valley to San Francisco or other points. For over three years prior to May 4, 1944, defendant Jess Gonzales, a contract hauler, who owned a fleet of trucks and operated them from Coachella, did most of the hauling of produce for appellants, but he also performed trucking services for thirty or more other people. Gonzales was a licensed truck operator who hauled on "Railroad Commission basis." On May 3, 1944, appellant Kelly asked Gonzales to haul 600 sacks of onions from Coachella to San Francisco. Gonzales informed Kelly that he did not have an adequate truck available but that Hernandez, who had three trucks and had been helping Gonzales haul produce to market, had a big truck available and he would send Hernandez to see him. Defendant Hernandez testified that he was advised by Gonzales, as to whom a nonsuit was granted, that appellant Kelly was looking for someone to haul

a load of onions to San Francisco, whereupon he called upon appellant Kelly and made an oral contract with him to haul the 600 sacks of onions from Coachella to San Francisco for the agreed sum of 75 cents per sack, payable when he returned to Coachella after delivering the onions. Hernandez testified further that Kelly "gave me directions where to go and I went out there and picked the load up."

"Q. [MR. ROBINSON] And you followed the directions that he gave you? A. Yes, sir.

"Q. Now, he told you where to take those onions to, didn't he? A. Yes, sir.

"Q. Where did he tell you to take them? A. San Francisco.

"Q. To where? A. Sunrise.

"Q. And by Sunrise, you mean the Sunrise Produce Company? A. Yes.

"Q. And did he tell you where that place was? A. Yes, sir.

"Q. Did he draw you a map? A. Yes, sir.

"Q. And he told you just exactly how to get there, didn't he? A. Yes, sir.

"Q. How did he, draw you a map and tell you just exactly how to get to the place where the onions were? A. Yes, sir.

"Q. And you went there and followed his instructions and directions, got the onions and were then doing, going ahead to San Francisco to finish up with the instructions and directions he gave you, weren't you? A. Yes, sir."

. . . . . . . . . . . . . . . . .

"Q. Now that was on the fourth day of May, 1944, and at that time you had fifteen tons of onions that belonged to the Sunrise Produce Company that you had picked up pursuant to their instructions and directions and were taking to San Francisco to deliver, pursuant to their instructions and directions, weren't you? A. Yes, sir."

. . . . . . . . . . . . . . . .

"[MR. SIMPSON] Q. He didn't designate what route you should follow in getting to San Francisco? A. No, I told him I been going to San Francisco for several times.

. . . . . . . . . . . . . . .

"Q. Mr. Kelly didn't instruct you as to who was going to drive your truck? A. No, he knew I was the driver.

"Q. He didn't tell you what speed to follow, did he? A. Oh, no."

"[MR. SIMPSON] Q. You were engaged in business as a truck operator? A. That's right.

. . . . . . . . . . . . . . . .

"Q. Did you have a license to operate as a truck operator in May, 1944? A. Oh, yes.

. . . . . . . . . . . . . . .

"Q. You were to receive a flat seventy-five cents a sack? A. That's right.

"Q. You never worked for Sunrise Produce Company on a regular salary or wage? A. Never did.

"Q. The only connections you ever had with Sunrise was this one load to San Francisco? A. Yes, sir."

. . . . . . . . . . . . . . .

"[MR. ROBINSON] Q. There was no written contract between you at all? A. No sir.

"Q. He just told you where to go and what to do? A. Yes.

"Q. And how to do it and you did it? A. That's right."

Defendant Hernandez testified that he went to the ranch where the onions were located about a mile outside of Coachella and his employees loaded the onions on the truck and semi-trailer. He left Coachella around 6 p. m. of May 3d, arriving at San Bernardino around 10:30 p. m., and at Los Angeles around midnight. En route he obtained gasoline and had a spare tire fixed and the brakes checked. He left Los Angeles for San Francisco around 6:30 a. m. on May 4th, and was driving north on Highway 99 toward Bakersfield when the accident happened.

Appellant Kelly in his testimony denied that he had any conversation with Hernandez prior to the accident and maintained that he had engaged defendant Gonzales to haul the load of onions involved and that Gonzales had made the arrangement with Hernandez. Defendant Gonzales testified that appellant Kelly had endeavored to get him to sign a statement that he had contracted to haul the load but that thereafter he "contacted John Hernandez and contracted this load to him," and defendant testified further that he refused to sign any such statement for Kelly "because I didn't have no contract with him, not either with Hernandez. I didn't have no contract with both of them." In view of the verdict of the jury it must be assumed that the jury believed the testimony of Hernandez and Gonzales in such respects and not the testimony of appellant Kelly.

Appellants' first contention is that the record does not contain substantial evidence that defendant Hernandez was an employee of appellants and that, therefore, the judgments against appellants, based upon the doctrine of *respondeat superior*, lack evidentiary support. They do not question the sufficiency of the evidence to support a finding that defendant Hernandez negligently drove the truck and semitrailer into the rear of the automobile in which respondents were riding, but argue most earnestly that the only reasonable conclusion to be drawn from the evidence is that Hernandez was an independent contractor for whose negligence appellants are not liable. They cite *Pire* v. *Gladding McBean & Co.*, 55 Cal.App.2d 108 [130 P.2d 143], as being decisive upon this proposition. In that case the court said, at pages 113 and 114:

"Plaintiffs contend that the trial court erred in directing a verdict in favor of defendant Gene Morrison. It is plaintiffs' theory that there was sufficient evidence to sustain a finding that defendant Hickey was an employee of defendant Morrison rather than an independent contractor.

"Defendant Morrison had been engaged in business for many years as a buyer, licensed by the Department of Agriculture. For several years he had also engaged in the trucking business as a 'contract hauler,' under the name of Associated Transportation Company. Defendant Hickey was also engaged in the trucking business as a 'contract hauler.' The latter owned a fleet of four trucks and was licensed to haul goods anywhere in this state.

"During the peak of the season when Morrison was purchasing fruit and contracting for the hauling of the fruit to the canneries, he frequently found that his own equipment was insufficient and that he needed to obtain the services of other contract haulers. He therefore obtained such services on a tonnage basis for specified trips or in other words on a 'load-to-load basis.' At the time of the accident, defendant Hickey was hauling peaches on such basis, under a contract with defendant Morrison, from a point near Yuba City to San Jose.

"We find no evidence in the record which would have sustained a finding that defendant Hickey was an employee of defendant Morrison. The uncontradicted evidence shows that defendant Hickey was a licensed contract hauler, operating a

fleet of trucks; that he paid the cost of maintenance and repair thereof; that he received no salary or wages from defendant Morrison; that he contracted with defendant Morrison solely for the result of his work and on a specified tonnage basis; that defendant Hickey alone had the right to hire and dismiss the drivers of his trucks and to select the driver who was to operate any particular truck on any particular haul; that he was free to select the route and could leave at any time after the truck was loaded provided he arrived at the cannery at any time during the next canning day; that he was never directed what to do or how to do it after the trucks had been loaded; and that there was no reservation by defendant Morrison of any right to give such directions. All of the evidence shows that defendant Hickey's status was essentially that of an independent contractor (13 Cal.Jur. 1014) and we find no evidence from which the jury might have found that defendant Morrison had the right of complete or unqualified control, the existence of which right is an essential characteristic of the employer-employee relationship. (*Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807 [159 P. 721]; *Billig* v. *Southern Pacific Co.,* 189 Cal. 477 [209 P. 241].) The trial court therefore properly directed a verdict in favor of defendant Morrison.''

Appellants also cite *Stephens* v. *Industrial Acc. Com.,* 191 Cal. 261, in which our Supreme Court said, at pages 262-263 [215 P. 1025]:

''The issue involved is whether or not Westlake was an employee or an independent contractor.

''The undisputed facts in the case appear to be that Westlake, the applicant for compensation, had for many years been the owner of wagons of different capacities, and a number of horses. Stephens, one of the petitioners, was a bridge contractor, and had undertaken to construct a bridge at French Gulch. He arranged with Westlake for the latter to haul the required amount of sand from a designated place to the bridge, to be paid for upon the basis of one dollar and fifty cents per cubic yard for the amount hauled. Westlake testified before the Commission that Stephens had given him 'the whole job' of hauling sand, but later told him he wanted another party to haul part of it. Westlake pursued his own course in hauling the sand. Stephens gave him no directions other than to show him the place from which it was to be taken and where delivered. Westlake was free

to come and go as he pleased, using as many or as few wagons as he chose. No supervision, direction, or control of any character was exercised over his movements. He was left to do the work in his own way, by his own methods, and with his own teams. Under these facts, concerning which there is no dispute, Westlake was unquestionably an independent contractor. (*Freiden* v. *Industrial Acc. Com.*, 190 Cal. 48 [210 P. 420]; *Pryor* v. *Industrial Acc. Com.*, 186 Cal. 169 [198 P. 1045]; *Fidelity & Deposit Co. of Md.* v. *Brush*, 176 Cal. 448 [168 P. 890]; *Donlon* v. *Industrial Acc. Com.*, 173 Cal. 250 [159 P. 715].)''

Appellants rely also on *Flickenger* v. *Industrial Acc. Com.*, 181 Cal. 425 [184 P. 851, 19 A.L.R. 1150], and *Luckie* v. *Diamond Coal Co.*, 41 Cal.App. 468 [183 P. 178]. In the Flickenger case the court said, at pages 431-432:

''Applying the principles of the foregoing authorities to the instant case it becomes apparent that Reeves was an independent contractor and not an employee. As we have seen, he was engaged in the 'truck business,' which is an independent occupation, and not only had his own patronage, but had taken over Ferguson's as well. He had his own truck and was doing a general hauling business. Flickenger merely told him what he desired to have hauled and Reeves loaded his truck in his own way at times suited to his own convenience; he never reported before going to work or after; no one controlled his actions at any time, except that he was expected to do a full day's work. Reeves was obliged to furnish his own appliances and pay all expenses in the operation of the truck and was not subject to any 'authoritative control' at any time. In other words, Flickenger was interested only in the result to be attained, but not in the means by which it was to be accomplished.''

And in *Luckie* v. *Diamond, supra*, the court said, at pages 480-481:

''Foulks exercised an independent occupation. He was, to use his own words, in the transfer and delivery business. There was evidence that defendant did not exercise, or assume the right to exercise, any authoritative control over Foulks as to how his truck should haul the loads. Foulks determined what route the deliveries should take. Terry and Cunningham were his servants. Defendant exercised no control over them or the truck, so far as the driving or method of taking the loads to their destination, or the general

care of the truck and its equipment, were concerned; nor did it assume to exercise any. It did not hire the driver or helper, and had no power to discharge them. The driver and his helper were paid by Foulks with his money; though it seems that at times the money for one or the other of these men was furnished by defendant, but the evidence shows that this was done as a matter of accommodation to Foulks. We think there is ample evidence to sustain a finding that Foulks represented defendant only as to the result of the work his truck did—the delivery of the loads at their respective destinations—and not as to the manner of the performance of the work. The driver of the truck and his helper, by delivering the loads, caused them to be dumped in heaps at their respective destinations. This, in its essence, was a 'result,' as much as if, being a building contractor, Foulks had orderly arranged steel, brick and mortar so as to produce a stately structure. Upon the facts as above stated, Foulks was not the servant of defendant, but an independent contractor, for whose negligence defendant was not responsible.''

Respondents in reply argue that none of the cases cited by appellants militates against respondents' position that the evidence was sufficient to support a finding that defendant Hernandez was an employee of appellants. Respondents argue that some of the salient features established by the testimony are: That the oral contract of hire is more indicative of an employment relationship than that of independent contractor; that defendant Hernandez performed services for the benefit of appellants, pursuant to the oral contract of hire; that there was a promise of stipulated compensation for such services; that appellants were the owners of the load which was being hauled by defendant Hernandez at their request; that appellants had the right to order icing of the load; that they gave directions and instructions to Hernandez; that they had the right to change the orders and directions; and the right to discharge defendant Hernandez.

However, under the facts as shown by the record as hereinbefore summarized, and in the light of the foregoing decisions, we can reach no other conclusion than that defendant Hernandez was not an employee of appellants but was an independent contractor. The evidence shows, without conflict, that Hernandez was a contract hauler licensed by the Railroad Commission and operating his own trucks under the Highway Carriers Act; that he was engaged to haul 600

sacks of onions from Coachella to San Francisco for an agreed compensation of 75 cents per sack; that he was told to pick up the onions at a certain farm near Coachella; that he was not familiar with the location of this farm and appellants furnished him with a rough map showing its location; that he was told to deliver the onions to appellants' place of business in San Francisco and was also given a rough map showing the location of said business; that he thereupon went to the said ranch, loaded the onions upon his truck and proceeded through San Bernardino and Los Angeles and onto Highway 99 toward San Francisco where the accident happened near Grapevine Station in Kern County. We are unable to find any evidence in the record from which it can be inferred reasonably that defendant Hernandez was anything other than an independent contractor.

An independent contractor is one "who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." (Lab. Code, § 3353.) The distinction between the status of an independent contractor and that of an employee rests upon several important considerations. A material and often conclusive factor is the right of an employer to exercise complete and authoritative control of the mode and manner in which the work is performed. The existence of such right of control, and not the extent of its exercise, gives rise to the employer-employee relationship. (*S. A. Gerrard Co.* v. *Industrial Acc. Com.*, 17 Cal.2d 411, 413-414 [110 P.2d 377]; *Riskin* v. *Industrial Acc. Com.*, 23 Cal.2d 248, 253 [144 P.2d 16]; *Industrial Indemnity Exchange* v. *Industrial Acc. Com.*, 26 Cal.2d 130, 135 [156 P.2d 926].) Strong evidentiary support of the employment relationship is "the right of the employer to end the service whenever he sees fit to do so." (*Press Publishing Co.* v. *Industrial Acc. Com.*, 190 Cal. 114, 120 [210 P. 820]; see, also, *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577, 582 [250 P. 570]; *Riskin* v. *Industrial Acc. Com.*, *supra*, 23 Cal.2d 248, 253; *California Employment Com.* v. *Los Angeles etc. News Corp.*, 24 Cal.2d 421, 425 [150 P.2d 186]; *Yucaipa Farmers etc. Assn.* v. *Industrial Acc. Com.*, 55 Cal.App.2d 234, 237 [130 P.2d 146].) "An employee may quit, but an independent contractor is legally obligated to complete his contract." (*Baugh* v. *Rogers*, 24 Cal.2d 200,

206-207 [148 P.2d 633, 152 A.L.R. 1043]; *Los Flores School Dist.* v. *Industrial Acc. Com.*, 13 Cal.App.2d 180, 183 [56 P.2d 581].) There are other factors to be taken into consideration, as stated in *Empire Star Mines Co.* v. *California Employment Commission*, 28 Cal.2d 33, at page 43 [168 P.2d 686]: (a) whether or not the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the workman supplies the instrumentalities, tools and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee. (Rest., Agency, § 220; Cal.Ann. § 220.)

It is clear from the evidence in the instant case that defendant Hernandez "rendered service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." It is also clear from the evidence that appellants had no right to exercise complete and authoritative control of the mode and manner in which the work was performed. Nor is there any evidence from which it may reasonably be inferred that appellants had the right to terminate the service of defendant Hernandez, once the agreement for hauling the onions was entered into, without being liable for breach of contract. We are convinced that the judgments in the instant case, based, as they are, upon the implied finding of the jury that defendant Hernandez was an employee of appellants, lacks sufficient support in the evidence.

Appellants contend further that the court erred in giving certain instructions relating to the doctrines of *respondeat superior* and independent contractor, and also that the court erred in refusing to give certain instructions offered by appellants bearing on these doctrines. However, in view of our conclusion that the judgments must be reversed because of the insufficiency of the evidence it is unnecessary to consider these alleged errors.

For the same reason it is unnecessary to consider the contention of appellants that the award of damages in each case was excessive as a matter of law.

In view of the foregoing, the judgments against appellants are reversed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied May 31, 1947, and respondents' petition for a hearing by the Supreme Court was denied June 26, 1947. Carter, J., voted for a hearing.