JOHNNY LEE HEATON AND THOMAS ANTHONY HEATON, BY
NEXT FRIEND, JOHNNY LEE HEATON *v.* J. S. KAGLEY.

(*Knoxville,* September Term (May Session) 1954.)

Opinion filed June 10, 1955.

On Petition to Rehear August 2, 1955.

MEARES & THOMAS, of Maryville, for plaintiffs in error.

GODDARD & GAMBLE, of Maryville, for defendant in error.

Mr. Chief Justice Neil delivered the opinion of the Court.

These two suits were brought in the Circuit Court of Blount County to recover damages (1) for personal injuries by Thomas Anthony Heaton, aged seven, by his father and next friend, and (2) by Johnny Lee Heaton in his own right to recover medical bills, etc., incurred by reason of the injuries to his son.

They were consolidated for trial by agreement of the parties. At the conclusion of all the evidence the trial judge sustained the defendant's motion for a directed verdict for the defendant, and later overruled the plaintiff's motion for a new trial. There was an appeal to the Court of Appeals, and, upon due consideration of appropriate assignments of error, that court reversed the action of the trial judge.

We granted the writ of certiorari, and the issues raised in the petition have been orally argued by counsel for the respective parties.

The only evidence as to the accident was the testimony of the injured boy. The defendant Kagley is a farmer and was engaged in hauling baled hay from the field to his barn. He was using a flat trailer that was pulled by a tractor and was operated in the field by his five-year-old son. The bales of hay were scattered about the field, and the trailer was being slowly moved from point to point to pick them up. The loading was being done by Mr. Kagley and a helper by the name of Dock True. The plaintiff lived on an adjoining farm. He had ridden to the field on the morning of the accident on the trailer. Upon reaching the field he followed around behind the trailer, waiting for it to go back to the barn (tr. p. 40) ; he was the only boy in the field other than the small boy who was

driving the tractor. While riding on the fender of the tractor, a bale of hay fell from the trailer and knocked him off, and the front wheel ran over his head and severely injured him. The ground at that point was level and the tractor was moving "straight ahead". The accident was described by the plaintiff, as follows:

"Q. What did you do, you say you were riding, where were you riding to, if you know? A. I was just setting on the fender and holding on to it, riding with Jimmie.

"Q. And what happened? A. And they were going straight out, and I went the way the tractor was going, and some hay fell off and knocked me off.

"Q. Where did it knock you? A. In front of the wheel."

\* \* \* \* \* \*

"Q. And where was Mr. Kagley when the hay hit you, and you were hurt? A. I reckon he was still in the trailer."

The plaintiff's declaration in a single count charged (1) that the bales of hay were carelessly and negligently stacked on the trailer; (2) that defendant was negligent in allowing his five-year-old son to drive the tractor "knowing him to be incompetent"; (3) that he negligently and carelessly created a "dangerous and attractive situation, knowing the plaintiff's son to be present"; (4) that defendant's driver drove the tractor in a careless and reckless manner; (5) in failing to stop said tractor so as to avoid injuring the plaintiff; and (6) in failing to take all or any precautions to avoid injuring the plaintiff.

The defendant filed special pleas in which he made a categorical denial of every charge of negligence contained

in the declaration. It is averred in the special plea that the plaintiff's son was a trespasser at the time of his injury and that the parent was guilty of contributory negligence in "allowing Thomas Anthony Heaton to run at large without parental restraint, guidance or control" and be present where the said tractor and trailer were being operated.

In sustaining the defendant's motion to direct a verdict on his behalf, the trial judge held, as follows:

(1) "There is no proof that the hay was stacked in a careless and reckless manner and to an excessive height; there is no proof how high the bales were stacked or the manner in which they were placed.

(2) "Now there is no proof in this record whether the tractor was being operated carefully, or whether it was being operated carelessly. There is not a bit of proof, whoever was driving, as to whether it was being driven carelessly or negligently at all, and the proof negatives the charge that it was being driven down grade.

"The little boy was specifically asked about that, and his testimony was that they were just going straight out.

"There is no proof therefore, to establish the tractor, whoever was driving it, even though a little boy five years old, was driving it carelessly or negligently, and there is no proof the manner in which the tractor and trailer rig was being operated caused a bale of hay to fall off of it.

"There is no proof of that at all. Why the bale of hay fell off, or what caused it to fall off is not shown by the proof in any way at all."

(3) "The 'attractive nuisance doctrine' has no

application in this case and cannot be availed of by the plaintiff, he being a trespasser.''

The Court of Appeals took a contrary view and held that the boy, Thomas Anthony Heaton, was an ''invitee'' and that the attractive nuisance doctrine was applicable, thus presenting a jury question. In support of this conclusion, there appears the following statement in the opinion:

''As we view the case, the doctrine of *res ipsa loquitur* should apply. Under the evidence for the plaintiffs the jury could conclude that every element for the application of this doctrine was presented by this case; that this boy was sitting at an exposed and dangerous place, where he might be jolted off his seat or within striking distance of a falling bale; that this was known not only to the defendant's agent but to the defendant himself; that rectangular objects, such as bales of hay, would not be expected to fall unless improperly packed or unless the center of gravity was displaced by a tilting of the carrier or by a sudden jerk or stop in the propelling agent; and that these things constituted evidence, in the absence of an explanation by the defendant, that the accident arose from want of care.''

It thus appears that ''the rule *res ipsa loquitur* should apply'', and for this reason the case was reversed and remanded for a trial on the facts. The learned Court of Appeals assumes that ''the jury might have concluded that the injured lad was riding upon this tractor fender with the knowledge of the defendant''. But there is no evidence whatever to support the inference that the defendant had such knowledge. Furthermore, there is no evidence as to when the lad got on the tractor, or how long he had been seated on the fender of the tractor when

he was knocked off by the bale of hay. The injured boy didn't claim that Mr. Kagley was present; his statement being, "I reckon he was there"; there is certainly no evidence that Mr. Kagley knew the boy was in a dangerous situation.

The learned Court of Appeals was in error in holding (1) that the injured boy was an "invitee" by reason of the existence of an attractive nuisance which was negligently and carelessly maintained, and (2) that the rule *res ipsa loquitur* should apply.

We know of no case holding that a hay field, or the operation of a tractor-trailer in hauling hay from the field, is such an attractive nuisance that the owner is charged with the duty of warning all children of the neighborhood to stay out; or carry on his farm work with such care and diligence that these children will not suffer any injury. One of the principal elements in determining if an object, place or condition is an "attractive nuisance" is that the possessor should recognize it as involving an unreasonable risk of harm to children. He is liable "only if he has reason to believe that there will be danger to them." Prosser on Torts, p. 622. The operation of farm machinery by the owner upon private property has never been thought of as an attractive nuisance.

In the instant case the injured boy was a lone visitor upon the defendant's land, either by permission, consent or acquiescence of the owner. He was a licensee under the law, and the only duty devolving upon the defendant was "To use reasonable care to discover him and avoid injury to him in carrying on activities upon the land". Prosser on Torts, p. 625.

We are not justified in concluding that the defendant's five-year-old son was driving the tractor-trailer from the barn to the field and back again with a load of

hay. We can only infer that he happened to be under the steering wheel while the tractor was moving from one bale of hay to another for each bale to be loaded upon the trailer. No one claims that he was guiding it or regulating its speed. While the law makes it mandatory upon the court, in ruling upon a motion for peremptory instructions, to draw all *reasonable* conclusions from the proven facts most favorable to the plaintiff, no conclusion should ever be based up *unreasonable* inferences, i. e., a mere conjecture as to what may, or may not, have occurred in a particular situation.

The respondent relies strongly upon *Burke* v. *Ellis*, 105 Tenn. 702, 58 S. W. 855, 857, as authority for submitting the case to the jury on the theory that the defendant was guilty of negligence *per se*. But the case is not controlling. It differs from the case at bar as appears from the following excerpt from the opinion:

> "An open car, loaded with earth, is such an inducement as would naturally lead children into danger, and it was negligence not to keep them away from the cars under such circumstances. There is proof tending to show that the child was not only permitted, but invited, to ride by the railroad employes, and with the knowledge of the superintendent."

In the instant case there is no evidence that the injured boy was *invited* to ride on the tractor-trailer, or that the defendant knew he was riding on the fender of the tractor.

Was the injured boy an invitee? We think not under the weight of the authorities. The case of *Garis* v. *Eberling*, 18 Tenn. App. 1, 71 S. W. (2d) 215, 222, and relied on by the respondent, Judge Faw, speaking for the court, states the general rule as to when one is an "invitee", as follows:

" 'There must be some mutuality of interest in the subject to which the visitor's business relates, although the particular business which is the object of the visit may not be for the benefit of the occupant' '', citing 3 Cooley on Torts (4 Ed.), Sec. 440, and this additional authority:

" 'The authorities are entirely agreed upon the proposition that an owner or occupant of lands or buildings, who directly or by implication invites or induces others to come thereon or therein, owes to such persons a duty to have his premises in a reasonably safe condition, and to give warning of latent or concealed perils.' 20 R.C.L., p. 55, par. 51."

\*   \*   \*   \*   \*   \*

" 'Where the owner permits his premises to be used by children as a playground, not intermittently or occasionally, but to such an extent as to cause the place to be generally known in the immediate vicinity as a place of recreation, he must use ordinary care to keep the premises in a safe condition.' Cooley on Torts (4 Ed.), § 441, p. 205."

The Eberling child was held to be an invitee because Garis permitted his property to be used as a playground for neighboring children. At the same time it was expressly held that an automobile was not a dangerous instrumentality and not an attractive nuisance. In the case at bar there is not even a suggestion that the defendant permitted children to use his property as a playground, or for any other purpose. The cases of *American Nat. Bank* v. *Wolfe*, 22 Tenn. App. 642, 125 S. W. (2d) 193, and *International Harvester Co.* v. *Sartain*, 32 Tenn. App. 425, 222 S. W. (2d) 854, have no bearing upon the issue now before us.

The determinative issue in the case at bar may be summed up in the following question: Does the rule *res ipsa loquitur* apply under the facts to which we have made specific reference?

We are not concerned with the duty devolving upon the owner of premises in attractive nuisance cases, wherein the child is held to be an "invitee". On the contrary we are dealing with a situation in which the child, Thomas Anthony Heaton, seven years of age, was not upon the defendant's premises due to the attraction of some unusual object or condition. But he was present as a visitor by permission, or the gracious tolerance, of the defendant and which was for his own pleasure.

The injury to the lad was not the result of any mechanical defect in the tractor-trailer, negligence in its movement, the manner in which bales of hay were loaded on the trailer, or failure to stop in time to avoid the accident. By no stretch of the imagination could the family purpose doctrine apply. There seems to be no dissent as to the foregoing conclusions, based on the undisputed facts.

We are unable to agree with the learned Court of Appeals, for whose opinion we have great respect, that the doctrine should apply upon the theory that the child was injured by a "falling object" which was under the control of the defendant. The fall of the bale of hay was an unforeseeable incident.

The controlling question is whether or not the defendant was guilty of negligence *per se* in failing to exercise due and proper care to keep the boy out of the hay field, and more especially away from the tractor; and should this issue be submitted to a jury under *res ipsa loquitur?*

We are unwilling to give our assent to the contention that a tractor, and other pieces of farm machinery, are, as a matter of law, an attractive nuisance. For us to do

so would convert every hay field in the State, where a tractor or other mechanical equipment is being used, into a place of potential danger, and subject every owner of such premises to liability in damages for his failure to keep children away from his premises.

Finally we do not think the rule *res ipsa loquitur* applies in the instant case. While it is true the tractor-trailer was under the exclusive control of the defendant, it was not an instrumentality that was inherently danger-ous. There was no negligence shown in its operation, nor will negligence be inferred due to the circumstances of its operation, for as was said by the trial judge, "The acci-dent would have happened no matter who was driving the tractor."

██ "The ordinary application of the maxim is limited to cases of an absolute duty, or an obligation practically amounting to that of an insurer." Cooley on Torts, (4th Ed.), Sec. 480, p. 371. In the case before us the injured boy was not an invitee but was upon the premises solely through the kindness and tolerance of the defendant. The duty devolving upon the defendant was to exercise reasonable care for his safety; not to insure his safety by observing his every movement and guarding him against every possible danger. We have been cited to no case in which the rule *res ipsa loquitur* is held to apply where the injured party was not present as an invitee, or where he had a right to be as a matter of law.

The case at bar is not controlled by the class of cases where a person is injured by some object falling from a building under construction. In a number of these cases, and other unexplained accidents, the rule is often re-ferred to as one of necessity, and that in the absence of proof the circumstances of the accident warrant an infer-ence of negligence, although not compelling it. It is

sought by plaintiff's counsel to bring this case within the foregoing decisions because the boy suffered a severe injury when a bale of hay fell from the trailer upon him, and hence the jury would be warranted in presuming, or inferring, that the hay was negligently piled upon the trailer. But the doctrine could only apply to the instant case by way of analogy. Moreover we think the rule, which has always been a source of such great controversy in the courts, should not be available to fix liability for an injury resulting from an unforeseeable accident such as we have here.

The judgment of the Court of Appeals is reversed, and the action of the trial court in directing a verdict for the defendant is affirmed.

## On Petition to Rehear

The petition to rehear (two cases) complains of the Court's disagreement with the trial judge as to whether or not the "attractive nuisance" doctrine applied, and also that the injured child was a trespasser. With due regard to the foregoing contention of counsel, we were not in disagreement with the trial judge. On the contrary his action in sustaining the defendant's motion for a directed verdict for the defendant was sustained. The injured boy was held to be not a trespasser or invitee, but a "licensee" under the facts disclosed in the record.

We are also taken to task for our conclusion and disagreement with the lower court in holding that there was no evidence to support the inference that the defendant knew the injured child was riding on the tractor, citing and quoting excerpts from the boy's testimony. In the original opinion we discussed the fact that the boy rode to the hay field with Mr. Kagley, and the boy's testimony as to the defendant's presence at the time of the accident.

When asked, "Where was Mr. Kagley when the hay hit you and you were hurt", he replied, "I reckon he was still on the trailer." But this is very far from the petitioner's contention that the defendant knew that young Heaton *was riding on the fender* and thus exposed to danger.

The next assignment of error complains of our discussion of the testimony relative to driving the tractor by defendant's small son. Regardless of what we may have stated about this matter it is wholly immaterial since we fully concurred in the conclusion of the trial judge "that the accident would have happened no matter who was driving the tractor."

The petitions to rehear are denied.