[Civ. No. 19028.   First Dist., Div. Two.   June 28, 1960.]

LLOYD G. HICKEY, JR., a Minor, etc., Appellant, v. WILLIAM T. NULTY, Respondent.

---

*Assigned by Chairman of Judicial Council.

J. Adrian Palmquist and Francis T. Cornish for Appellant.

Carlson, Collins, Gordon & Bold and Appelbaum, Mitchell & Bennett for Respondent.

KAUFMAN, P. J.—Plaintiff, Lloyd G. Hickey, Jr., a minor, through his guardian ad litem, brought this action for personal injuries sustained when he came in contact with a mowing machine operated by the defendant, Tosta, an employee of the defendant, Santos, on a field owned by the defendant, W. T. Nulty. At the close of the plaintiff's case, the trial court granted a judgment of nonsuit in favor of the defendant Nulty.

The only issue on appeal is the propriety of the judgment of nonsuit in favor of the defendant Nulty, the landowner. Plaintiff argues that the trial court erred in granting the judgment of nonsuit as the plaintiff presented sufficient substantial evidence so that the applicability of section 339 of the Restatement of Torts became a question of fact for the jury and that the fact that the defendants, Santos and Tosta, were independent contractors does not affect the liability of the landowner. The defendant Nulty argues that as the employer of an independent contractor, the negligence of the other defendants cannot be imputed to him, and, that under the circumstances of this case, section 339 of the Restatement of

Torts is completely inapplicable and only sections 413 and 416 are relevant.

The record here reveals the following: the accident occurred about 5:40 p. m. on April 29, 1958, at which time, the plaintiff was 2 years and 9 months old. On the date of the accident, the defendant Nulty was the absentee owner of a 46-acre tract of unimproved land in the city of Concord in Contra Costa County. This was a portion of the defendant's once larger holding, the balance of which has been subdivided for homes. When the adjoining land was subdivided the defendant filed a map showing that portions of the vacant land had been dedicated for streets. The remainder of the property had been sold by the defendant in 1955 but the title revested in him on March 18, 1958, on default of the buyers. The plaintiff and his parents lived at 4137 Lillian Drive in Concord, on one of the 40-odd homes built on the portion subdivided. Their home adjoined the defendant's unimproved holding; there were no fences.

The vacant land on which the accident occurred had been farmed in past years but had not been planted the year of the accident and bore a volunteer hay crop. Some time in March, 1958, Nulty made arrangements with the defendant Santos for the cutting of the volunteer crop. Nulty agreed to let Santos harvest the crop in return for a 25 per cent share. It is admitted, however, that Santos was not an agent of Nulty but an independent contractor who used his own machines. It is not disputed that Nulty did not know exactly when Santos was going to cut the hay and that he did not warn Santos about the children in the vicinity.

Santos and his employee, Tosta, began to cut the hay about 11 a. m. with two tractors mounted with horizontal sickle bars, driven by a power take-off from the tractors. The hay was about 3 feet high. They soon became aware of the children in the area; a boy rode through the field on a bicycle and several other boys sold cold drinks to the two tractor drivers. Other children started from one of the homes into the field and were sent back. Some time in the afternoon, Santos gave a ride to his school-age nephew. On the day of the accident, Santos told the Concord police: "All day long, while we were cutting hay, we had to keep chasing children from field we were cutting. Several times we stopped mowing machines to tell children to go home."

The tractors drove one behind the other in circles around the field, mowing strips of hay the width of the sickle bar.

Some time in the process, they cut three legs off a cat. By the late afternoon, the entire field was mowed except for an area about 75 feet by 150 feet located behind the back yard of the plaintiff's home. The accident occurred about 220-225 feet from the rear of the Hickey back yard where the hay was sparse. Santos testified: ". . . Joe was cutting hay ahead of me when he ran mowing machine into little boy laying in hay. Boy was laying down in uncut hay directly in path of mowing machine operated by *Joseph* Tosta . . ." Tosta applied the brakes immediately and Santos picked up the boy and carried him to the nearest house which was his home. The boy's right arm was cut off and was found some distance from the scene of the accident. There was a trail of blood behind the sickle.

The boy's parents testified that they had lived in the house at the edge of the defendant's property since July, 1957; that the children of the area played in the defendant's field and had made paths in it on their way to school and church. There was no evidence that the defendant had notice of this fact or that he had been on the property between March 10, 1958, and the date of the accident. On the afternoon of the accident, they were in their back yard with the boy. They were aware that the mowing was in process and did not know that the boy was not in the yard with them until after the accident when Santos brought him through the hole in the hedge.

■■■ A nonsuit may be granted only where, disregarding conflicting evidence on behalf of the defendant and giving to the plaintiff's evidence all the value to which it is legally entitled, therein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support the verdict on any tenable theory of liability. (*Reynolds* v. *Willson,* 51 Cal.2d 94, 99 [331 P.2d 48].)

■ As a general rule, the owner of land is under no duty to keep his premises safe for trespassers. (*Peters* v. *Bowman,* 115 Cal. 345, 348 [47 P. 113, 598, 56 Am.St.Rep. 106].) The evidence in this case does not suggest that the plaintiff occupied any position other than that of a trespasser. It is argued, however, that when the evidence is viewed in accordance with the above stated rules relating to nonsuits, the liability of the defendant Nulty under the exception to the general rule, usually referred to as the attractive nuisance doctrine, is clear. The conditions necessary to bring this doctrine into play as

stated in section 339 of the Restatement of Torts have been adopted as the law of this state with respect to the liability of a possessor of land for injury to a child trespasser. (*King* v. *Lennen,* 53 Cal.2d 340 [1 Cal.Rptr. 665, 348 P.2d 98]; *Garcia* v. *Soogian,* 52 Cal.2d 107 [338 P.2d 433]; *Courtell* v. *McEachen,* 51 Cal.2d 448 [334 P.2d 870]; *Reynolds* v. *Willson,* 51 Cal.2d 94 [331 P.2d 48].)

Section 339 provides as follows:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

Whether there is a concurrence of all the foregoing conditions or factors is generally a question of fact (*Copfer* v. *Golden,* 135 Cal.App.2d 623 [288 P.2d 90]), since different inferences may be drawn from the evidence as to the existence of one or more of these required conditions. Plaintiff's argument is, of course, that the jury should have been permitted to decide whether the defendant Nulty was liable. We cannot agree. Assuming *arguendo* that the boy because of his tender years, was in fact unaware of the danger, the evidence would nevertheless be insufficient to warrant the liability of the landowner.

Before liability may be imposed under section 339, evidence must be presented which would support a determination that the defendant knew or should have known that children who would not appreciate the danger involved were likely to trespass upon the property. (Rest., Torts, 339 (a) and (b).) In the instant case, there is no evidence that the defendant Nulty actually knew that children had been accustomed to play in his field. It has never been held that the landowner

is required to police his premises or to make any inquiry to discover whether there is a likelihood that children will trespass. (47 Cal.L.Rev. 427, 451.)

Even if the defendant knew that children lived in an area adjacent to his field, he could reasonably assume that youngsters old enough to be allowed to venture unattended would be cognizant of the hazards presented by the mowing machines. Plaintiff attempts to argue that because of the great danger, the defendant Nulty owed a duty to the boy. However " 'The presence of danger to an unattended infant is not necessarily a test of anything but the need of parental care. An infant is afraid of nothing and in danger of everything when left to his own devices. The primary duty of care is upon the parents of an infant. (Citing case.) Their neglect will not convert a situation admittedly dangerous to an infant into an attractive nuisance which would not be so classed as to older children.' " (*Wilford* v. *Little*, 144 Cal.App.2d 477 at p. 482 [301 P.2d 282].)

While we do not impute the negligence of a parent to the child, it would be entirely reasonable for the defendant Nulty to believe that children of the age of Lloyd G. Hickey, Jr., who were so young that they could not appreciate the danger of the mowing machine, would not have the opportunity to roam the field alone. (*Cf. Davis* v. *Goodrich*, 171 Cal.App.2d 92 [340 P.2d 48].)

As to the fourth requirement of section 339, there is a question whether the presence of the mowing machines on the defendant's land constituted an "artificial condition" which, if the other requirements were met would subject the defendant to liability. The question is one of first impression. In the earlier authorities, the doctrine of section 339 was severely limited to certain kinds of artificial conditions. (See *Woods* v. *City & County of San Francisco*, 148 Cal.App.2d 958 [307 P.2d 698], for an excellent summary.) The more recent cases, however, have extended its application to all kinds of conditions not previously considered within the scope of the doctrine. (See for example, *King* v. *Lennen*, 53 Cal.2d 340 [1 Cal.Rptr. 665, 348 P.2d 98] [swimming pool]; *Courtell* v. *McEachen*, 51 Cal.2d 448 [334 P.2d 870] [burning embers]; *Helguera* v. *Cirone*, 178 Cal.App.2d 232 [3 Cal. Rptr. 64]; *Woods* v. *City & County of San Francisco*, 148 Cal.App.2d 958 [307 P.2d 698].) Our Supreme Court has stated several times that the question of liability must be decided in the light of all circumstances and not by arbitrarily

placing cases in rigid categories on the basis of the type of condition involved. (*King* v. *Lennen,* 53 Cal.2d 340, 343 [1 Cal.Rptr. 665, 348 P.2d 98]; *Garcia* v. *Soogian,* 52 Cal.2d 107 [338 P.2d 433].)

The universal rule appears to be that the doctrine of section 339 does not apply to moving vehicles. (See *Wilson* v. *City of Long Beach,* 71 Cal.App.2d 235 [162 P.2d 658, 163 P.2d 501], and authorities collected in 3 A.L.R.2d 758*.) On the other hand, the doctrine has generally been held to apply to moving machinery on the premises. (See, for example, *Woods* v. *City & County of San Francisco,* 148 Cal.App.2d 958 [307 P.2d 698]; *Brown* v. *Reliable Iron Foundry, Inc.,* 174 Cal. App.2d 294, 298-299 [344 P.2d 633], and cases collected in 62 A.L.R.2d 898.) The instant case appears to fall somewhere in the middle between these two lines of authorities. However, on the basis of the record before us, we are unable to say that the trial court improperly concluded that the doctrine relied upon was inapplicable.

The few authorities our research has uncovered support our view. In *Preston* v. *Austin* (1919), 206 Mich. 194 [172 N.W. 377], the minor plaintiff, five years of age, lived opposite the farm of the defendant. The plaintiff first watched the defendant fixing a mowing machine and conversed with him. After the conversation, the defendant drove his mowing machine to the northwest corner of the house where grass was growing while the plaintiff, of his own volition, got the mail from the mailbox and took it to the back door on the south side of the house. The defendant ran into the plaintiff with his machine and cut off his left foot completely. The defendant testified that he did not know the child was in the grass and did not see him until the machine struck him. At the close of the plaintiff's case, the court directed a verdict in favor of the defendant on the ground that no negligence was shown and that the question of whether the defendant was in the exercise of due care was a matter of law under the evidence. On appeal, the plaintiff, like the plaintiff here, argued that

---

*The only two authorities to the contrary are (1) *Skinner* v. *Knickrehm,* 10 Cal.App. 596 [102 P. 947], where the attractive nuisance doctrine was held to apply to a house moving operation on the streets of Los Angeles on the ground that the property on which the accident occurred was left unattended and unguarded. This case was later disapproved and not followed in *Wilson* v. *City of Long Beach,* 71 Cal.App. 2d 235 [162 P.2d 658, 163 P.2d 501]; (2) *Middaugh* v. *Waseca Canning Co.,* 203 Minn. 456 [281 N.W. 818], 3 A.L.R.2d 770, which like the Skinner case involved children hitching rides on moving vehicles.

the issue of due care was for the jury and that the principle of active negligence should apply. In affirming the judgment, the court said at 379 [172 N.W.] :

"We think that before the principle of active negligence can apply, some duty must rest upon the defendant which is violated by his conduct or act. There is no claim that the defendant knew that the plaintiff was down in the grass. From whatever angle we view the case, it ultimately brings us back to the one question: Was there any duty resting on the defendant, under the facts shown in the record, to keep a lookout for this child? We are of the opinion that this question should be answered in the negative."

The case, however, preceded section 339 of the Restatement of Torts and the attractive nuisance doctrine was not discussed.

More recently, the Supreme Court of Tennessee held in *Heaton* v. *Kagley* (1955), 198 Tenn. 530 [281 S.W.2d 385], that the attractive nuisance doctrine did not apply in a situation where a 7 year old boy came onto an adjoining farm and climbed and rode a tractor-trailer unit and was knocked therefrom by a falling bale of hay, even though the farmer knew he was riding on the tractor along with the farmer's son. In reversing the lower court (which had held the attractive nuisance doctrine applicable), the Supreme Court of Tennessee said at 387 [281 S.W.2d] :

"We know of no case holding that a hay field, or the operation of a tractor-trailer in hauling hay from the field, is such an attractive nuisance that the owner is charged with the duty of warning all children of the neighborhood to stay out; or carry on his farm work with such care and diligence that these children will not suffer any injury. One of the principal elements in determining if an object, place or condition is an 'attractive nuisance' is that the possessor should recognize it as involving an unreasonable risk of harm to children. He is liable 'only if he has reason to believe that there will be danger to them.' Prosser on Torts, p. 622. The operation of farm machinery by the owner upon private property has never been thought of as an attractive nuisance."

The court then went on to say at 389: "We are unwilling to give our assent to the contention that a tractor, and other pieces of farm machinery, are, as a matter of law, an attractive nuisance. For us to do so would convert every hay field in the State, where a tractor or other mechanical equipment is being used, into a place of potential danger, and subject

every owner of such premises to liability in damages for his failure to keep children away from his premises.''

We think this reasoning is particularly applicable here, particularly in the light of the fourth requirement of section 339, that ''the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.'' The utility of farm machinery is beyond a question. The uncontroverted evidence showed that the defendant Nulty owned a 46-acre tract; and that the cost of fencing was about $1,500-$2,000 per mile. In all of the cases relied upon by the plaintiff, the fourth requirement was easily met. Here, we must draw the line at a situation where the protective measure would destroy or impair the usefulness of the property itself. (*Puchta* v. *Rothman*, 99 Cal.App.2d 285, 289, 290 [221 P.2d 744].)

Plaintiff, relying on *Courtell* v. *McEachen*, 51 Cal.2d 448 [334 P.2d 870], also argues that the defendant Nulty may be liable as the employer of a negligent independent contractor, under the exceptions set forth in sections 413 and 416* of the Restatement of Contracts. However, the very authority cited by the plaintiff points out at page 457 that these sections require knowledge of the employer himself concerning the existence of a risk to others, so that a showing of such knowledge must be made regardless of what the independent contractor may have known. As indicated above, no such showing was made here. It would appear, therefore, that the general rule is that the employer of an independent contractor is not responsible for the latter's negligence in the operation of a vehicle (*Clarke* v. *Hernandez*, 79 Cal.App.2d 414 [179 P.2d 834]; *Pire* v. *Gladding McBean & Co.*, 55 Cal.App.2d 108 [130 P.2d 143, 981]), where the operations occur on his own land

---

*''§ 413. One who employs an independent contractor to do work which the employer should recognize as necessarily creating, during its progress, conditions containing an unreasonable risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the absence of such precautions, if the employer

''(a) fails to provide in the contract that the contractor shall take such precautions (as to which see § 416), or

''(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.''

''§ 416. One who employs an independent contractor to do work, which the employer should recognize as necessarily requiring the creation during its progress of a condition involving a peculiar risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions.''

(*Barrabee* v. *Crescenta Mutual Water Co.*, 88 Cal.App.2d 192 [198 P.2d 558]; *Bedford* v. *Bechtel Corp.*, 172 Cal.App.2d 401 [342 P.2d 495]; Rest., Torts, § 426), unless he exercises active control over the employees or equipment used by the independent contractor. (*McDonald* v. *Shell Oil Co.*, 44 Cal.2d 785 [285 P.2d 902].) As indicated above, the uncontroverted evidence here showed that the defendant exercised no control over Santos or his equipment or employees.

Therefore, since the facts in this case, as shown by the plaintiff's evidence, demonstrate the inapplicability of the doctrine of section 339 of the Restatement of Torts and no other basis of liability was suggested by plaintiff's evidence, the nonsuit as to the defendant Nulty was properly granted.

Judgment of nonsuit affirmed.

STONE, J. pro tem.*— I concur in the result but I do not approve of the discussion of the attractive nuisance doctrine. The grass which attracted the children had not been planted by the absentee landowner but was a volunteer crop. The dangerous instrumentality, the mowing machine, which injured the youngster was not owned, maintained or operated by the landowner. For these reasons, I do not believe the case comes within the scope of the attractive nuisance doctrine. Otherwise, I concur in the opinion affirming the judgment.

Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 24, 1960.