PENSACOLA, ST. ANDREWS & GULF STEAMSHIP COMPANY, A CORPORATION, *Plaintiff in Error,* v. LOUISE AUSTIN, *Defendant in Error.*

In an action seeking to recover damages for personal injuries alleged to have been caused by the negligence of the defendant, where it is conclusively established by the evidence that the plaintiff, of her own volition. and for·her own convenience, went to the freight dock of the defendant steamship company, a most unusual place for ladies or ·passengers, or the public generally to go, for the purpose of receiving a package which the plaintiff's mother had sent her by one of the employes of the defendant, who worked in the engine-room of the steamer and who brought such package not in his official ꞌcapacity but merely as a friend, it not being billed to plaintiff and there being no charges of any kind thereon, and that while waiting on the dock for such employe the plaintiff was struck and injured by a barrel of rosin falling through the open door of a box car, a most unusual occurrence, while such car was being pushed forward in the usual way by some negro men, and the evidence fails to show any wantonness or wilfulness, or even gross negligence on the part of the defendant toward the plaintiff, who was then a trespasser, or at most a licensee, there could be no recovery, and it was error for the trial court to refuse to direct a verdict for the defendant.

Writ of error to the Circuit Court for Escambia County.

The facts in the case are stated in the opinion of the court.

*Blount* & *Blount* & *Carter,* for Plaintiff in Error;

*R. P. Reese* and *J. P. Stokes,* for Defendant in Error.

SHACKLEFORD, J.—The defendant in error brought an action against the plaintiff in error, wherein she sought to recover damages for personal injuries alleged to have been occasioned by the negligence of the defendant corporation. The declaration as amended consisted of five counts, but the court instructed the jury that the evidence would not warrant a recovery upon any of the first four counts and directed that the jurors confine their consideration of the case to the fifth count, which is as follows:

"The plaintiff by her attorneys, sues the defendant, for that, to-wit: On November 5, A. D. 1910, in Escambia County, Florida, the defendant was a common carrier of passengers and freight by water, for hire, and, as such common carrier, was possessed of, owned and operated between the ports of Pensacola and Apalachicola, in the State of Florida, and other ports, the steamer Tarpon; that the date aforesaid, defendant's said steamer Tarpon was lying alongside Tarragonna Street wharf, in the city of Pensacola, Florida, and by and through defendant's agents and servants, was discharging from defendant's said steamer Tarpon to a certain box car on a certain railroad track on said Tarragonna Street wharf aforesaid, certain large and capacious barrels filled with resin and of great weight, preparatory to shipping said resin to inland points by railroad, said box car, the said steamer Tarpon, and said barrels of resin being at the time under the management and control of defendant's agents and

servants; that, on the date aforesaid, plaintiff called at
said Tarragonna Street Wharf for the purpose and with
the intention of securing from aboard said steamer Tar-
pon a package that had been brought to plaintiff from her
mother at Apalachicola, Florida, by a member of the
crew of said steamer Tarpon; that, on said date, it be-
came and was the duty of defendant not to injure plain-
tiff, by and through the negligence of its servants and
agents, after defendant and its agents and servants had
knowledge of plaintiff's presence upon said Tarragonna
Street wharf, near the said steamer Tarpon, and the box
car upon the railroad track aforesaid, to which said
steamer was discharging and storing said barrels of resin,
in the manner aforesaid, and of her peril; that, on said
date, defendant, through its said agents and servants had
knowledge of plaintiff's presence at said Tarragonna
Street Wharf, near the said steamer Tarpon and the box
car upon the railroad track aforesaid, to which said
steamer Tarpon was discharging and storing said
barrels of resin, in the manner aforesaid, and of her peril;
that, on said date, not regarding its duty in this behalf,
the defendant, through its agents and servants so care-
lessly and negligently conducted itself, with knowledge
of her presence and peril as aforesaid, in and about the
loading of said barrels of resin from defendant's said
steamer Tarpon to the box car upon the railroad track
aforesaid, and in and about the storing of said barrels
of resin on said box car, and in and about the move-
ment of said box car, as to cause a certain barrel of resin
of great weight to be thrown from said box car upon plain-
tiff, who was then and there standing on said Tarra-
gonna Street wharf, thereby knocking plaintiff from said
wharf into the waters of the Bay of Pensacola, many feet
below, at a point where said waters were much over plain-

tiff's head and sufficient to drown her, and plaintiff, being unable to swim, would have drowned, had it not been for the heroic assistance of a gentleman standing by who leaped into the water and rescued plaintiff as she was going down for the last time and while she was in imminent danger of being drowned, whereby plaintiff was in great peril, suffered greatly from fright and nervous shock, and received many wounds and bruises and sprains at and upon her person and limbs, from the effects of which plaintiff was compelled to take to her bed and there be and remain for a long period of time, and after she was able to leave her bed was compelled to limp about her home from the effects of which plaintiff has suffered, continues to suffer and will hereafter suffer intense pain in body and mind, and plaintiff, lost much time from her vocation of school teacher and the consequent loss of earnings, and was compelled to lay out and expend much money and to obligate herself for medical and doctors bills in and about the treatment of herself, and is permanently disabled. And the plaintiff claims ten thousand dollars."

To this count of the declaration the defendant filed the following pleas:

"1. That it is not guilty in manner and form as in said declaration alleged.

4. That the plaintiff's own negligence directly contributed to her alleged injury in this, that the place of the alleged injury at the time mentioned in the declaration was an obviously dangerous place, and the plaintiff voluntarily placed herself in such obvious place of danger without authority or invitation of defendant, or its authorized agent, in consequence whereof such alleged injury occurred.

5. That the plaintiff at the time of such alleged in-

jury did not exercise ordinary and reasonable care for her own safety, but negligently placed herself in a dangerous position near the box car mentioned in the declaration, in consequence thereof her alleged injury occurred.

6.    That plaintiff, by the exercise of ordinary and reasonable care for her own safety, could have seen the danger and avoided the alleged injury, but she failed to exercise such care, in consequence whereof her alleged injury occurred.

And for further pleas to the fifth count: Defendant denies that it at the time of the alleged injury to the plaintiff, through its agents and servants, had knowledge of the peril of the plaintiff, as alleged in the said count."

The plaintiff joined issue upon all of these pleas and the case came on for trial before a jury, which resulted in a verdict and judgment in favor of the plaintiff for the sum of $1,599, which judgment the defendant had brought here for review by writ of error. Twenty-two errors are assigned, but they need not be considered in detail.

Each of the parties litigant, as did also the trial judge, proceeded upon the theory that the statute modifying the common law rule as to the liability of railroad companies in certain cases had no applicability. See Sections 3148 and 3149 of the General Statutes of 1906. In so doing they would seem to have pursued the proper course. See Atlantic Coast Line R. R. Co. v. McCormick, 59 Fla. 121, 52 South. Rep. 712, and German American Lumber Co. v. Hannah, 60 Fla. 70, 53 South. Rep. 516, 30 L. R. A. (N. S.), 882, wherein prior decisions of this court will be found cited. This being true, the doctrine of comparative negligence cannot enter into a consideration of the case. As at common law, the plaintiff could not

recover for injuries to herself caused by the negligence of another if she in any appreciable way contributed to the proximate cause of the injury, upon the theory that there is no apportionment of the results of mutual negligence. In the absence of a statute changing the common law rule, where plaintiff and defendant are each at fault, there can be no recovery by the plaintiff.

It will be observed that the fifth count of the declaration, which we have copied above and on which the recovery was had, does not allege that the plaintiff was at the place where the injury occurred by invitation of the defendant, either express or implied. It does not even allege that she was rightfully there, but, on the contrary alleges that she was there only for her own convenience. The ground of liability upon which the plaintiff relied was the failure of the defendant to exercise reasonable care for her safety after it had discovered her presence there and that she was in peril. The undisputed evidence clearly establishes that the defendant corporation had two docks or wharves in the city of Pensacola, one where passengers and freight to and from the steamer Tarpon were taken on and discharged, which was the regular landing place for the steamer, and the other where there was nothing except railroad warehouses and where no kind of business was transacted except export business, "no regular commercial business done there;" "there was no place there for the landing of passengers or taking on of passengers." Such evidence further establishes that the plaintiff, of her own volition and for her own convenience, went down to this wharf, a most unusual place for ladies or passengers, or the public generally to go, for the purpose of receiving a package which the plaintiff's mother had sent her from Apalachicola by one of the employes of the defendant, who worked

in the engine room of the steamer and who brought such package not in his official capacity but merely as a friend, it not being billed to her and there being no charges of any kind thereon. The plaintiff herself testified that she went down to the wharf, in response to a letter from her mother, stating that she had sent her a package by Mr. Floyd, who worked on the Tarpon, and she, her mother, wished plaintiff to go down to the wharf and get it in order to save Mr. Floyd the trouble of bringing it to her. The plaintiff went down there in company with a lady friend and had been down there about ten minutes when the accident occurred, the two ladies engaged in talking to each other and to Mr. Harry J. Fannin, an employe of the defendant, to whom plaintiff stated that she was expecting Mr. Floyd to bring her a package and Fannin had gone to the chief engineer's office and sent word to Floyd that the plaintiff wished to see him. While standing on the dock waiting for Floyd, a box car loaded with barrels of rosin for the steamer was struck forcibly by a flat car, which was pushed forward by some negro men, in order to get such loaded car out of the way, that being the regular course or custom pursued in getting the loaded cars out of the way. While such loaded car was being so propelled forward, a barrel of rosin fell out through the open door and struck the plaintiff, inflicting the injuries for which she seeks to recover damages from the defendant. Mr. Fannin, one of the plaintiff's witnesses on cross-examination, testified as follows: "The door of this loaded car was open. They did not usually move a car with the door open, sometimes they move them with the door open and shut the door later. We often move the cars with the door open and close the door later. It is a fact that sometimes the doors would get hung. Sometimes

they would have to nail strips across the doors, they would not work at all. It was very unusual for the barrels to roll out of the cars. They hardly ever roll out. In fact, I do not think I ever saw one roll out before, that is out of a box car. I think I have seen them roll out of flat cars." He is corroborated by Mr. Floyd, one of the defendant's witnesses, who testified as follows: "This was the first time I ever saw a barrel of rosin fall out of a car when it was struck by another car. This was the first time I ever saw it done." We have given all the evidence a most careful reading and fail to find any wantonness or wilfulness, or even gross negligence on the part of the defendant toward the plaintiff, who was there "as a trepasser, or at most a licensee," as the trial court instructed the jury. This being true, we are of the opinion that the trial court erred in refusing to direct a verdict for the defendant. This conclusion makes it unnecessary to discuss the other assignments.

The judgment must be reversed, and it is so ordered.

WHITFIELD, C. J., and TAYLOR, COCKRELL and HOCKER, J.J., concur.