SĀLTS et al. v. SALTS.—190 S. W. (2d) 188.

Eastern Section. April 14, 1945.

Petition for Certiorari denied by Supreme Court, October 6, 1945.

Robert M. May, of Jonesboro, for appellant.

W. D. Lyon, of Bluff City, and E. M. Woolsey, of Bristol, for appellee.

BURNETT, J. The bill in this case was filed to set aside, or in the alternative to obtain a construction of a tax deed made to defendant (appellant here) W. H. Salts. A demurrer was interposed, based on various grounds, which was overruled by the Chancellor and the defendant permitted to rely on the grounds thereof in his answer.

The Chancellor held the deed null and void because the tax, on which the tax suit was based and under which the State acquired title, had been paid by the owners of the land prior to the institution of the tax suit. He further held that the defendant (appellant here) the purchaser from the State, and the complainants (appellees here) were tenants in common and any purported purchase by the defendant enured to the benefit of his cotenants, the complainants.

It appears from the pleadings, exhibits and proof in the record that in a suit in the Chancery Court of Washington County styled "State of Tennessee, for Use etc. v. Mrs. A. B. Adams et al.," the following described land was ordered sold as the property of J. D. Salts: "in the 6th Civil District of said County and is bounded as follows, to-wit: On the North by the lands of River, on the East by the lands of Salts, on the South by the lands of

Embree Iron Co., on the West by the land of Willis and containing forty-three (43) acres, more or less."

On July 15, 1938, the land was struck off to the State of Tennessee for "the amount of taxes, interest, penalties, attorney's fees and court costs due thereon for the year 1929." This sale was confirmed on October 3, 1938. The State of Tennessee through its authorized officers executed a deed to the defendant for the property on October 18, 1940.

J. D. Salts owned a boundary of land of 43 acres in 1929, which meets the description above quoted. The record shows that he paid taxes thereon prior to and subsequent to 1929. The tax receipts for various years are filed herein. The proof fails to show payment for 1929. The trustee of Washington County says the taxes for 1929 were not paid. The parties to this suit say that they cannot find a receipt for 1929. They do file a receipt dated January 20, 1930, for $10 which is marked "Amt. on tax." This is not a tax receipt. The Chancellor says that the person signing this receipt is a son of the former trustee (trustee at the time the receipt was issued) and was his deputy. There is no proof on the subject. The Chancellor further says: "Knowing the method of doing business by Frank Haws while Trustee, which finally resulted in the loss of many thousands of dollars to Washington County, there is scarcely a doubt but that this receipt represents a payment of $10.00 on the 1929 taxes of J. D. Salts. . . . The Court is of the opinion that $10.00 was paid on the 1929 taxes without question, and that very probably the balance of the taxes of 1929 were paid by the same person who paid the $10.00."

The Chancellor therefore concludes that the taxes have been paid. There is no proof whatsoever of this fact in the record. Partial payment of the tax does

not release the lien or relieve the property for the balance of the tax due. After a partial payment and the failure to pay the balance it is the duty of the proper officers to enforce collection of the balance in the same manner as if no partial payment had been made. The original tax should be credited with the partial payment.

J. D. Salts died in 1936. The tax suit above referred to was instituted prior to his death and service of process was had on him at the time of the institution of the suit. It was not necessary to revive the tax suit against the heirs of J. D. Salts before a sale of the property on which the taxes were delinquent. It has long been held in this State ''that a tax proceeding was a proceeding in rem, and that parties are bound by actual or constructive notice.'' Esch et al. v. Wilcox et al., 181 Tenn. 165, 178 S. W. (2d) 770, 772.

It is argued by the appellees that this tax suit was begun in 1932 and not prosecuted to its final conclusion until 1938 and that due to this fact the tax deed is void for laches. We cannot agree with this argument. The record fails to show when the suit was begun. We must assume that it was brought within due time, i. e., the tax officials did their duty. We will take judicial knowledge of the fact that during this period the legislature passed one or more acts freezing tax suits. This naturally caused considerable delay in the prosecution of the tax suit. It has been held that a failure on the part of the State to bring a tax suit to a hearing for seven years is not prejudicial to the taxpayers. State v. Rowan, 171 Tenn. 612, 106 S. W. (2d) 861.

It is also assigned as error on behalf of the appellees that the advertisement of sale prior to the purchase by the State is defective and that, therefore, the sale is void. The advertisement substantially described the property

but gave the name of the owner as "J. C. Salts" instead of "J. D. Salts."

The jurisdiction of the Chancery Court to sell land for taxes is statutory and it is prerequisite to a valid tax sale that what is required by the statute must be complied with. Sampson v. Marr, 66 Tenn. 486. The advertisement was made. The description is adequate. This family is the only one by the name living in the 6th District of Washnigton County. J. D. Salts was personally served with process when the original suit was brought. He was dead when the advertisement was had. His grandson, one of the complainants here, bore the initials "J. C." We are unable to see how this could in anyway injure these complainants. It was held in Carney v. Bigham, 51 Wash. 452, 99 P. 21, 19 L. R. A. (N.S.) 905, that failure to correctly use the middle initial in the advertisement for the sale of land for taxes was fatal. The facts of the case though are entirely different from those in the instant case. We do not consider it authority for the proposition.

It is averred in the original bill filed in this cause that:

"For many years prior to his death the said J. D. Salts was the owner of about 43 acres of land located in the 6th Civil District of Washington County, Tennessee, on which he and his family resided. . . .

"Sometime before his death he decided to divide his said land among his children and grand-children, giving to each just such portion as he desired him or her to have and to make a deed to each of their respective shares, reserving a life estate in it all but one piece during the remainder of his life and that of his wife.

"That prior to his death the said J. D. Salts and his wife *divided* the said land (referring to the 43 acres) into

several parts and deeded it in *severalty* to the parties to this suit and to Jake Salts.'' (Italics ours.)

It is impossible from the proof to say just how much land was conveyed out of this acreage by J. D. Salts and wife. It is clear though that he conveyed at least as much as the total acreage amounts to. There is not a scintilla of evidence that J. D. Salts left any 'land in which the defendant would share as a tenant in common with others. In view of this fact there is no factual basis on which one can say that the defendant was a tenant in common with others in the land he secured under the tax deed. If it could be determined that the defendant was a tenant in common unquestionably the Chancellor was correct in his conclusion. See Perkins et al. v. Johnson, 178 Tenn. 498, 160 S. W. (2d) 400.

On April 3, 1930, J. D. Salts and wife Susan D. Salts (one of the complainants herein) conveyed to W. H. Salts (defendant) four and one-fifth acres of the land covered by the tax deed. This deed was for a valuable consideration, with general warranty and free of incumbrances. When the defendant found that the 1929 taxes (which unquestionably were a lien on the small acreage he purchased as well as a larger acreage) had not been paid he had the right to either pay these taxes or purchase the entire property sold for the protection of the land he had purchased. Under this record it probably became the duty of Susan A. Salts (his mother) one of the grantors to pay this tax. It might have been the duty of all the children of J. D. Salts, including this defendant, to pay this tax ratably.

J. D. Salts and wife, Susan A., conveyed a portion of this land to two sons, to-wit: Frank and Harrison Salts. The grantors reserved a life estate in this land. This conveyance was dated in 1933. In 1935, Harrison Salts

and his wife conveyed their one-half undivided interest in this land to the complainants, Mrs. Kate Salts, Curtice Salts and Irene Salts subject to the life estate of J. D. Salts and wife, Susan A. Salts. In 1941, W. H. Salts conveyed to the last above named grantees the same undivided one-half interest. He recited it was a portion of the land he acquired under the tax deed in question.

In 1933, J. D. Salts and wife, S. A. Salts, conveyed a portion of his land to Ed. Salts and Curtice Salts (complainants herein) subject to the life estate of the grantors.

Other conveyances of portions of the land were made by J. D. Salts and wife prior to the fixing of the 1929 tax lien and subsequent thereto. It is not necessary to detail these conveyances other than to say that taking into consideration all conveyances there was no land left in J. D. Salts and his wife, Susan A. Salts.

Susan A. Salts, one of the complainants, is the mother of the defendant. Ed. Salts, one of the complainants, is a brother of the defendant. Kate Salts, one of the complainants, is the widow of a brother of the defendant. Curtice Salts and Irene Salts are the children of Kate Salts and the deceased brother of the defendant. Jake Salts, Frank Salts and Harrison Salts are brothers of the defendant. They are not parties to the suit and do not participate herein in any particular. The record clearly shows that Frank Salts owns a one-half undivided interest in part of the land in question. It is intimated that Jake likewise owns part of it.

The mother, Susan A. Salts, has been an invalid for a quarter of a century. She has and was at the time of taking the proof herein living on a part of the land with her son, Ed. Salts. She has a life estate in a large portion of the land. The defendant and his brother, Ed. (with whom the mother lives) have not spoken in fifteen

or twenty years. The defendant has not aided in the care of this invalid mother during this time.

"At common law an adult child is under no duty or obligation to contribute to the support of his parents. Whatever duty rests on him in this respect must be based upon either contract or statute." 39 Am. Jur., p. 711, sec. 70.

There is no contract shown in this case. We have been cited no statute nor can we find any governing the matter.

There are many persons who, by reason of their interest in the premises and their relationship to others interested therein, may not, for equitable reasons, become purchaser. One glaring example is dealt with in Perkins v. Johnson, 178 Tenn. 498, 160 S. W. (2d) 400. Others will be found in an excellent annotation in 140 A. L. R. 294 et seq., and in 123 A. L. R. 398. Generally speaking, they include persons whose duty it is to pay taxes or who have such an interest in the property that they might redeem the same from tax sale and save themselves from loss and injury, or those lien holders who may pay the taxes and are given a preferred lien over other lien holders and the titleholder for the amount of the taxes paid. Then there is the class of persons occupying fiduciary relationships, such as agents, attorneys, guardians, trustees, etc., who may not violate their trust by becoming purchasers at tax sale of the trust property. See 51 Am. Jur., p. 918 et seq.

"The decisive factor" says Thaxter, Justice, in Dalton v. Lessard, 136 Me. 94, 2 A. (2d) 172, 173, "is not that the obligation to pay the tax rests on the one asserting the title, but the real question is whether on broad equitable grounds he should be estopped to assert the title which he holds."

 In the instant case the defendant apparently felt there was a moral as well as an equitable obligation on him to protect his nephew and niece. This is shown herein by his voluntary conveyance to them, without monetary consideration, the land that was theirs which was covered by his tax deed. He does not convey to his mother the land she had a life estate in apparently because if he did so his brother Ed. would reap the benefits thereof. In the reply brief of counsel for the defendant it is said: "The fact remains that it was this defendant who saved the land for his mother after it had been purchased by the State of Tennessee and was then standing upon the open market; it was this defendant who came to the rescue, although, the complainants for years had received the benefit and income from the farm according to their own testimony."

If the tax deed is a valid vestiture of title in this defendant he could immediately eject his mother therefrom. Even though there is no legal obligation in this defendant to look after the interests of his mother there certainly is a strong moral obligation on his part to pay these taxes for her so as to save her property.

Under the facts shown in this record none of the parties had any knowledge that this tax was delinquent, unless it was the defendant. The parties (complainant) only learned of this matter a short time before the present suit was filed. This was long after the defendant had purchased the property under the tax deed in question. We think it was the duty of this defendant to have notified his mother of these delinquent taxes when he learned of them.

The defendant did not testify herein. The mother and brother lived on this property for more than three years after he purchased it through the tax deed. Aren't we

justified in presuming that his purchase was for the benefit of his mother? It would seem from the language of his counsel, above quoted, that this question should receive an affirmative answer.

It was certainly necessary for him to make the purchase to protect his own land which was covered by the tax.

The complainants having tendered into court the amount paid by the defendant plus interest, for this tax deed it will be treated as a redemption for those holding the legal title to the land.

Hale and McAmis, JJ., concur.

### On Petition to Rehear.

BURNETT, J. A petition for a rehearing is filed herein based largely on a reargument of matters heretofore argued which have been very carefully considered by us before reaching the conclusions and findings as set forth in our original opinion. The present petition also challenges certain findings and conclusions we have reached. We have again thoughtfully considered these matters and feel that under the facts as herein presented we are correct.

The statement made that "the mother and brother lived on this property for more than three years after he purchased it through the tax deed", is referring to the time the matter was considered by us and not the time of the filing of the bill herein.

The petition must be denied.