MRS. JANICE G. RIDLEY, Plaintiff-Appellant, v.
JUANITA SPENCE, Defendant-Appellee.
—456 S.W.2d 846.

Middle Section. March 26, 1970.

Certiorari Denied by Supreme Court July 20, 1970.

572

Todd, J., dissented and filed opinion.

George H. Cate, Jr., of Cate & Cate, Nashville, for plaintiff-appellant.

John J. Hollins, of Edwards, Schulman, McCarley, Hollins & Pride, Nashville, for defendant-appellee.

PURYEAR, J. The plaintiff, Mrs. Janice G. Ridley, was injured while she was a social guest on the premises of defendant, Miss Juanita Spence, in Nashville, Tennessee, and this suit was filed by plaintiff against defendant to recover damages for such injury.

The declaration alleges that on or about April 3, 1967, the plaintiff was a visitor and guest on premises owned

by the defendant, upon which premises there was a frame residence and a brick garage apartment, the latter of which had been recently constructed.

Said declaration further alleges that, while being escorted around the apartment and the garage by the defendant, the plaintiff came to the front of the garage area, where an overhead door was opened by the defendant in order that the plaintiff and other guests might see the garage; that as the plaintiff stood just outside the garage entrance, the defendant suddenly unexpectedly and negligently pulled the overhead garage door down, causing it to strike plaintiff's head a violent blow, as a result of which plaintiff was injured.

To this declaration, the defendant filed a general issue plea of not guilty and the case was tried before the Circuit Judge and a jury on the 3rd and 4th days of June, 1969.

After all the evidence presented by both the plaintiff and defendant had been introduced and. both parties announced that they had concluded introduction of evidence, defendant moved the trial Court to grant a directed verdict in favor of defendant upon the ground that since the uncontroverted evidence showed the plaintiff was a social guest and there being no evidence that the defendant was guilty of gross, wilful, or wanton negligence, there was no legal basis for a recovery of damages by the plaintiff.

This motion was sustained and the trial Court directed a verdict in favor of defendant. Thereafter, within the proper time, plaintiff filed a motion for new trial, which was overruled and this appeal resulted.

Two assignments of error have been filed, which are as follows:

"1. The Trial Court erred in granting the defendant's motion for a directed verdict at the conclusion of all the proof.

2. The Trial Court erred in holding that the defendant would be liable to the plaintiff under the circumstances shown by the proof only if guilty of gross negligence or wilful or wanton misconduct."

While there is considerable controversy as to the extent of plaintiff's injury, there is little, if any, controversy about the way and manner in which the accident occurred.

The night the accident occurred, which was April 3, 1967, the plaintiff and defendant, together with several other persons had attended a birthday supper being given for a mutual friend of theirs at the B. & W. Cafeteria in Nashville.

After supper, plaintiff went to the telephone to call her daughter and request her daughter to come to the B. & W. Cafeteria and take her home. However, the defendant and two of her friends offered to take the plaintiff home, which offer was accepted by plaintiff, but it was first decided that all four of these people would stop at the home of defendant at 2200 Natchez Trace, where the defendant had recently completed building a garage apartment on her premises and which apartment the defendant wanted them to see.

After looking at the apartment, they decided to also see the garage, which garage was equipped with a door that was opened by raising it up into the ceiling and closed

by pulling it down, which opening and closing was accomplished manually.

After the parties had looked at the garage and while the defendant was talking to her other two guests, she started closing the garage door by pulling it downward, at which time the door struck plaintiff upon the head. Although the plaintiff was not knocked down by the blow, she was injured, but there is no insistence made by plaintiff and no evidence in the case to show that the accident was caused by any wilful, wanton or grossly negligent conduct on the part of defendant.

It is the plaintiff's theory that the defendant did not exercise ordinary care in closing the garage door, as a result of which failure to exercise ordinary care, the plaintiff was injured.

As we have heretofore stated, the trial Judge held that, in the absence of evidence of wilful or wanton misconduct or gross negligence, the plaintiff could not recover and he, therefore, directed a verdict in favor of the defendant.

▆ As has been held in numerous cases in this State, the rule for determining a motion for a directed verdict requires the trial Judge and the reviewing Court on appeal to look to all of the evidence, to take the strongest ligitimate view of it in favor of the opponent of the motion, and to allow all reasonable inferences from it in his favor; to discard all countervailing evidence, and if then, there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. General Motors Corp. v. Dodson (1960), 47 Tenn. App. 438, 338 S.W.2d 655; Poole v. First Nat. Bank (1946), 28 Tenn.App. 327, 196 S.W.2d 563; Phillips v.

Newport (1945), 28 Tenn.App. 187, 187 S.W.2d 965 and many other cases.

Likewise, and in reverse order, it is true that where there is no material and determinative evidence to support a verdict for the opponent of the motion it must be sustained. Cude v. Culberson (1947), 30 Tenn.App. 628, 209 S.W.2d 605; Camurati v. Sutton (1960), 48 Tenn.App. 54, 342 S.W.2d 732.

After considering the authorities which have been cited and those we have been able to find by independent research, we have concluded that the trial Judge correctly directed a verdict in this case.

The case upon which the defendant relies most strongly is Walker v. Williams (1964), 215 Tenn. 195, 384 S.W.2d 447, in which case the plaintiff was a social guest of the defendants when she received a fall that resulted from the fact that a screen door, she was in the act of opening when she fell, had a broken spring, by reason of which she was not required to push the door as hard as she had been accustomed to pushing it when the spring was functioning in the usual manner.

In that case the trial Court directed a verdict for defendants, this Court affirmed the trial Court and certiorari was granted by the Supreme Court. After the Supreme Court had heard arguments and carefully considered briefs filed by both parties, the Court adopted the opinion of this Court, written by Judge Cooper, and quoted Judge Cooper's opinion verbatim, which opinion contains the following:

" 'Plaintiff urges that the benefits to a host from social intercourse are just as real as monetary benefits

derived from business visitors, and that we should not follow the universal rule classing social guests as licensees, but should give them the same status as business visitors. We have given serious consideration to plaintiff's argument, and in doing so have examined a number of cases from other jurisdictions wherein a similar argument was made and rejected. See cases set out above. As a result we are convinced that we should join the great current of authority and hold that a social guest is not in law an invitee but is a licensee to whom the owner owes no duty except to refrain from willfully injuring him or from committing negligence so gross as to amount to willfulness, or from leading him into a trap. Jack M. Bass & Co. v. Parker, 208 Tenn. 38, 343 S.W.2d 879; Birdsong v. City of Chattanooga, 204 Tenn. 264, 319 S.W.2d 233; Smith v. Burks, 43 Tenn.App. 32, 305 S.W.2d 748; Westborne Coal Co. v. Willoughby, 133 Tenn. 257, 180 S.W. 322.

'In the instant case no claim is made, nor is there any evidence whatever to show that defendants were guilty of any wilful or wanton misconduct nor that the defendants led the plaintiff into a trap. Consequently, we are of the opinion that the trial court's action in directing a verdict for the defendants was correct.' " Supra, pp. 201, 202, 384 S.W.2d p. 450.

In the later case of Anthony v. Anthony (1969), 60 Tenn. App. 143, 444 S.W.2d 714, this Court cited Walker v. Williams, supra, and applied the rule:

" '* * * that a social guest is not in law an invitee but is a licensee to whom the owner owes no duty except to refrain from willfully injuring him or from committing negligence so gross as to amount to willfulness, or from leading him into a trap.' " Supra, p. 715.

■ In the instant case, however, plaintiff insists that the holding in Walker v. Williams, supra, and Anthony v. Anthony, supra, are not applicable because those two cases dealt only with factual situations in which liability was sought to be predicated upon negligence consisting of allowing the existence of defects in the premises upon which the guest was injured, whereas, in the instant case liability is sought to be predicated upon negligence of the defendant arising out of an activity carried on by defendant upon her premises.

Plaintiff further insists that we should follow the rule adopted by the Supreme Court of Washington in Potts v. Amis (1963), 62 Wash.2d 777, 384 P.2d 825, in which case the plaintiff, a social guest upon premises of the defendant, was injured as a result of the defendant negligently striking plaintiff with a golf club while demonstrating its proper use.

In that case, the Washington Court partially overruled several cases previously decided by that Court, holding that the mere fortuitous circumstance that the injury occurred while plaintiff stood upon land belonging to the defendant should not relieve the defendant of liability and held that regardless of plaintiff's status as a licensee, the defendant, in carrying on the activity in demonstrating the proper use of a golf club, owed plaintiff the duty to use reasonable care not to injure him.

However, some rather strong dictum in the case of Westborne Coal Co. v. Willoughby, 133 Tenn. 257, 180 S.W. 322, decided by our Supreme Court in 1915, prevents us from adopting the rule laid down by the Supreme Court of Washington in Potts v. Amis, supra, although it

seems that the Washington Court has adopted the majority rule.

In the Willoughby case, the defendant was operator of a mine which employed one James Willoughby, but on the day the accident occurred, which resulted in the death of Willoughby, he was not at work but was merely on the premises of the defendant in the capacity of a licensee. His death occurred as result of the accidental explosion of some blasting powder which was, at the time, being transported on an electrically driven car.

Although, the evidence did not show what caused the explosion to occur, it was the theory of plaintiff's intestate that the negligent operation of the car by defendant's employees caused an electrical spark to ignite the powder. In commenting upon plaintiff's theory of the case, the Supreme Court said:

"It does not appear that such a phenomenon had ever before occurred at the mines, or that any of defendant's servants had any reason to suspect that such a result might occur from running the motor over said waste left upon the track at the sandhouse. Let it be assumed, though not decided that the plaintiff in error would be liable to one of its invitees as for negligence on account of an occurrence such as is alleged to have happened, through the direction of its foreman Boone, in ordering the car to be loaded, knowing that it would be transported in the manner stated, and in not having the track inspected at the point where it passed by the sandhouse for the purpose of ascertaining whether it was incumbered with sand; still, this negligence would not be such as would make the plaintiff in error liable to a licensee, because it would be only an inadvertence,

a want of care. It would not be an absence of care in a matter so obvious as to indicate the certainty or great probability of danger. White v. [Nashville C. & St. L.] Railroad, 108 Tenn. 739, 70 S.W. 1030; Railroad v. Meacham, 91 Tenn. 428, 19 S.W. 232.'' Supra, pp. 262, 263, 180 S.W. p. 324.

In that case, the plaintiff also insisted that the defendant was guilty of what is called ''active'' negligence as distinguished from ''passive'' negligence and that in such a case there is liability to a licensee.

In commenting upon this insistence, the Supreme Court further said:

''The term 'active negligence' (to recur for a moment to that specific subject), is one of extensive meaning, obviously embracing many occurrences that would fall short of willful wrongdoing, or of crass negligence; for example, all inadvertent acts causing injury to others, resulting from the failure to exercise ordinary care; likewise all acts the effects of which are misjudged; or unforeseen, through want of proper attention, or reflection. So the term, as a general one, is too broad. It covers acts of willful wrongdoing, also those which are not of that character. Therefore it is not reliable as a measure of right or duty for the purpose of determining liability in cases of the kind before us. Under such a rule, there would be no distinction between the duty owing to licensees and trespassers on the one hand, and invitees or others to whom the exercise of ordinary care is due.'' Supra, p. 268, 180 S.W. p. 325.

Thus, it will be seen that the doctrine of distinguishing between liability predicated upon ''active'' negligence and liability predicated upon ''passive'' negligence has

not been accepted by the Appellate Courts of this State, but on the other hand, the doctrine was expressly rejected in Westborne Coal Co. v. Willoughby, supra.

In other jurisdictions, there is a lack of uniformity on the question of a distinction being made between liability predicated upon "active" negligence and liability predicated upon "passive" negligence.

In view of what our Supreme Court said in Westborne Coal Co. v. Willoughby, supra, we feel constrained to adopt the reasoning of the Second District Court of Appeals of Florida in Cochran v. Abercrombie (1960), 118 So.2d 636, 79 A.L.R.2d 986, wherein it was held that a host was not liable to a licensee where the host's negligence consisted of conducting an activity upon his own premises without exercising ordinary care.

In this latter mentioned case, the plaintiff went to defendant's residence for the purpose of discussing a proposed fishing trip, and while there the defendant requested plaintiff to step over to the carport for the purpose of looking over the motor of defendant's automobile. The defendant raised the hood and, while leaving plaintiff in front of the car observing the motor, which was not then running, the defendant opened the door of the car and engaged the starter while the car was in forward gear, as a result of which the car lurched toward the plaintiff and injured him.

The trial Court directed a verdict in favor of the defendant upon the ground that the plaintiff was a licensee and that under the case law of Florida, the standard of care owed to a licensee was to refrain from wilfully or wantonly injuring him.

In rejecting the doctrine of active and passive negligence and affirming the directed verdict of the trial Court, the Appellate Court said:

"While no Florida cases have been cited in the briefs of either plaintiff or defendant where the facts are similar to those in the instant case, we feel that the case of Pensacola, St. Andrews & Gulf S. S. Co. v. Austin, 1912, 63 Fla. 241, 58 So. 611, 613, precludes our adopting the 'active' and 'passive' negligence theory which is urged by the plaintiff. In that case the negligence of the defendant can be classified as 'active', although the words 'active' and 'passive' were not used to distinguish the types of negligence. The negligence involved in the instant case would undoubtedly be held in the jurisdictions which have adopted the 'active' and 'passive' negligence theory to be 'active' negligence. Following the reasoning in the Pensacola, St. Andrews & Gulf S. S. Co. v. Austin case, supra, then, we must decline to adopt from other jurisdictions the 'active' and 'passive' negligence theory." Supra, pp. 638, 639, 79 A.L.R.2d pp. 989, 990.

The assignments of error are respectfully overruled and the judgment of the trial Court is affirmed. The plaintiff-appellant will pay all of the costs of this appeal.

Shriver, P. J. (M.S.), concurs.

Todd, J., dissents.

Todd, Judge (dissenting).

Tennessee authorities cited in the majority opinion involved negligence in maintenance or defective condition of premises, sometimes called passive negligence; whereas the present case involves active negligence of the de-

fendant in pulling an overhead door down upon the head of plaintiff. There was no defect in the door, the injury was caused by the negligent operation of the door, rather than by its negligent maintenance or defective condition.

As stated in Westborne Coal Co. v. Willoughby, 133 Tenn. 257, 180 S.W. 322 (1915), there is no useful distinction between "active negligence" and "passive negligence" in judging liability of the defendant for injuries which occur upon his premises. A much more valid and useful distinction may be made between the terms, "condition of premises" and "conduct of defendant at time of injury."

Each Tennessee case cited in the majority opinion involved "condition of premises." In Walker v. Williams, 215 Tenn. 195, 384 S.W.2d 447 (1964), the "condition" was a broken spring on a screen door. In Anthony v. Anthony, 60 Tenn.App. 143, 444 S.W.2d 714 (1969), the "condition" was a concrete step. In Westborne Coal Co. v. Willoughby, supra, the "condition" was a defective mine car or track which produced a spark and explosion merely by the non-negligent operation of a switch.

Thus it is seen that none of the cited Tennessee opinions were concerned with the "conduct of the defendant," but rather with the "condition of the premises."

Candor requires the recognition of Hatcher v. Cantrell, 16 Tenn.App. 544, 65 S.W.2d 247 (1934), wherein "conduct of the defendant" was involved. Hatcher was standing in the driveway of Miss Cantrell when she drove her automobile over him. The trial court directed a verdict for the defendant, and this Court reversed and remanded for a new trial because there was evidence that Hatcher was an invitee rather than a licensee.

In the case of Heaton v. Kagley, 198 Tenn. 530, 281 S.W.2d 385 (1954), the distinction urged herein *was* recognized by our Supreme Court. The minor plaintiff was riding on the fender of a tractor without the knowledge or consent of the farmer when he fell under the wheel of the tractor and was injured. The trial court directed a verdict for the defendant and the Supreme Court affirmed, saying:

"(3) In the instant case the injured boy was a lone visitor upon the defendant's land, either by permission, consent or acquiescence of the owner. He was a licensee under the law, and the only duty devolving upon the defendant was 'To use a reasonable care to discover him and *avoid injury to him in carrying on activities upon the land'*. Prosser on Torts, p. 625." (Emphasis supplied.)

The common law has not been abrogated by Tennessee decisions on this subject. It has merely been *interpreted* as to the *degree of care* required in the *maintenance* of the *condition* of premises for the presence of invitees, licensees, or trespassers.

In Volume 15, Tennessee Digest, pp. 316, 317, the subject "Negligence" is divided as follows:

"A. Personal Conduct

B. Dangerous Substances, etc.

C. Condition and Use of Land, Buildings and Other Structures."

Other collections of decisions have similar separate treatment of "condition" and "conduct" under the subject of "Negligence."

The present case of *conduct* may be distinguished from previous Tennessee cases of *condition* without doing violence or disrespect to previous Tennessee decisions.

In 65 C.J.S. Negligence sec. 63(36), pp. 707, 709, is found the following:

"While not recognized in some jurisdictions (citing authority from Florida only), many of them follow the rule that the *owner or occupant of property owes to a licensee thereon a duty to use reasonable care not to injure him through affirmative and active negligence.* (Citing authorities from 18 states and the District of Columbia, including numerous federal cases.)

\* \* \* \* \* \*

"Active or affirmative negligence may be defined broadly as that occurring in connection with activities conducted on the premises, and passive negligence as that which causes danger by reason of the physical condition of the premises. The failure to warn of danger, unaccompanied by affirmative conduct, is negative in its nature and not active negligence. (Citing numerous authorities)

\* \* \* \* \* \*

"Under Restatement, Second, Torts, a possessor of land is subject to liability to his licensees for physical harm caused to them by his *failure to carry on his activities with reasonable care for their safety* if, but only if, he should expect that they will not discover or realize the danger, and they do not know or have reason to know of the possessor's activities and of the risk involved.

\* \* \* \* \* \*

"Where the presence of a licensee on the premises is known, *the owner or occupant owes the duty to exercise reasonable care to avoid injuring him, at least by any affirmative or positive acts of negligence,* * * *. (Citing numerous authorities) (Emphasis supplied.)

In 38 Am.Jur., Negligence, sec. 104, pp. 766, 767 is found the following:

"The fact that a licensee is upon the premises with the consent, at least the tacit consent, of the owner or occupant should have some bearing upon the liability of the owner or occupant for an injury sustained by the licensee upon the premises. Undoubtedly the authorities are inclined to impose a greater obligation upon an owner or occupant than that of merely not setting a trap for persons who are properly at the place at which they are injured. Theoretically, the degree of diligence owing to the licensee by the proprietor of premises on which there is a pitfall is less than that to invited guests; yet *after the presence of the licensee is known, exactly the same caution may be required of the proprietor to satisfy his duty to such person as would be required if he had invited the latter to come upon the premises.* In several cases, a person guilty of 'active,' as distinguished from 'passive,' negligence has been held to be liable for a resulting injury to a bare licensee, while in many cases an owner or occupant has been held free from liability in respect of an injury sustained by a licensee, upon the ground that the negligence, if any, of the owner or occupant was 'passive.' Thus, *if, while a licensee is upon premises of another in the exercise of the due care, the owner is affirmatively and actively negligent* in the management of the property or business, as a result of which the licensee

is subjected to increased hazard or danger, *the owner will be liable* for injuries sustained as a result of such negligence.

\* \* \* \* \* \*

"\* \* \* According to some authority, *the only duty* which is owed by an owner or occupant to a licensee in a position on the premises *where he would not reasonably be expected is to abstain from wilfully injuring him.*" (Emphasis supplied.)

In the supplement to the above text is found the following:

"\* \* \* And it is submitted that the *true test* of the property owner's liability is *whether he has acted as a reasonably prudent man* would act in view of the probability of injuries to others. It must be remembered that a trespasser is not denied the right to recover because a trespass is a wrongful act, but because, *since his presence is not to be anticipated, the property owner owes him no duty* to take precautions for his safety. That anticipation of the presence of a trespasser or licensee is the basis of liability for injury is demonstrated by the exception from the general rule of nonliability made by the common law in the case of mantraps and spring guns.

"The suggestion above named, that the test of liability is not the nature of the landowner's conduct, but the existence of grounds for anticipating another's presence, so as to require the taking of reasonable precautions for his safety, is not without judicial support." (Emphasis supplied.)

In Cochran v. Abercrombie, Fla.App., 118 So.2d 636, 79 A.L.R.2d 986 (1960), cited by the majority, the Florida court said:

"The duty owed by the owner or occupant of premises to each class of persons is also distinct. The duty owed by the owner or occupant to the trespasser is to refrain from committing a wilful or wanton injury against him *with the rule being softened after discovery by the landowner of peril to the trespasser*. Byers v. Gunn, Fla.1955, 81 So.2d 723." (Emphasis supplied.)

The A.L.R. annotation headed by the foregoing opinion (79 A.L.R.2d 986) reviews the decisions on liability of host to guest for injury other than by condition of the premises, and contains six decisions favorable to the host and 12 decisions favorable to the guest. Subsequent to said article, the Supreme Court of Washington has decided the case of Potts v. Amis, 62 Wash.2d 777, 384 P.2d 825 (1963), which is cited in the majority opinion and which is contrary to *Abercrombie,* supra.

In a prior article in 156 A.L.R. 1221, the lead case is Oettinger v. Stewart, 24 Cal.2d 133, 148 P.2d 19 (1944), wherein is found the following:

"Moreover, the instructions as to licensees contain an incorrect statement of the law. The jury was told that: 'An "Invitee" who enters upon portions of the premises where she has no right to enter becomes a "Licensee" and the *only duty to her* then is to refrain from *wilful or wanton injury.*' (Italics added.) There has been some confusion in the authorities as to the duty of care owed by a landowner or possessor to a licensee. The courts have frequently made general statements to the effect that the only duty to a licensee,

is to abstain from willful or wanton injury. See, for example, Powers v. Raymond, 197 Cal. 126, 131, 239 P. 1069; (Citing authorities) *On their facts, however, all of these cases involved injuries resulting from a defective condition of the premises, as distinguished from active conduct of the possessor or his employees.* In other cases it has been suggested that a duty of ordinary care is not owed to a licensee even though injury resulted from active conduct rather than mere passive condition of the premises. (Citing authorities) The prevailing view is to the contrary, however, and it is now generally held that in cases involving injury resulting from active conduct, as distinguished from condition of the premises, *the landowner or possessor may be liable for failure to exercise ordinary care toward a licensee whose presence on the land is known or should reasonably be known to the owner or possessor.* Rest., Torts, sec. 341; Prosser on Torts [1941], 630; 45 CJ 803-801. In Prosser on Torts, supra, the author explains: ''Some courts have gone so far as to say that there is no duty to a licensee other than to refrain from inflicting wilful or wanton injury upon him. As in the case of trespassers, however, an increasing regard for human safety has led to a retreat from this position. It is now generally held that as to any active operations which the occupier carries on, there is an obligation to exercise reasonable care for the protection of a licensee. *He must run his train, operate his machinery, or back his truck with due regard for the possibility that the permission given may have been accepted and the guest may be present.'* The more recent California decisions have adopted this rule. (Citing authorities) The cases cited herein suggesting that a lesser standard of care is applicable where injury re-

sults from active conduct of the landowner or possessor are inconsistent with the later decisions and must be disapproved.

"In the present case it is apparent that plaintiff's presence on the premises was known to defendant at the time of the accident and that the accident did not result from a defective condition of the premises. Accordingly, even if plaintiff were a licensee rather than a business visitor, it is clear that defendant had a duty to exercise ordinary care to avoid injuring her, and the trial court should not have given the criticized instruction. * * *" (Emphasis supplied.)

In the article following said case in A.L.R. is found the following:

"The courts in a number of jurisdictions have held that it is improper to charge an owner or occupier with the duty merely to refrain from injuring a licensee through wanton or wilful acts, and that a licensor owes the licensee the higher degree of duty to refrain from 'active negligence,' at least after the latter's presence is known or should have been anticipated, although the licensor may not be held responsible for 'passive negligence' arising because of the condition of the premises." (Citing cases from California, North Carolina, District of Columbia, Illinois, Minnesota, Nevada, New York, and Pennsylvania.)

The same annotation quotes Houston Belt & T. R. Co. v. O'Leary, Tex.Civ.App., 136 S.W. 601 (1911) as follows:

"In no case that we have examined or to which our attention has been called has it been held that the pro-

prietor cannot be held liable to a licensee who while upon the premises is injured, *not by conditions then existing on the premises, but by some affirmative. negligence of the proprietor or his servants.* * * * It has been often held that *where a person is rightfully upon the premises of another, even as licensee, he has the right to require of the proprietor that he so conduct himself as not to injure him through his active negligence.*" (Emphasis supplied.)

Other cases recognizing liability to a licensee for negligent actions of the host are Olderman v. Bridgeport-City Trust Co., 121 Conn. 177, 4 A.2d 646 (1939); Garstka v. Republic Steel Corp., 294 Mich. 387, 293 N.W. 691 (1940) and Ridley v. National Casket Co., 161 N.Y.S. 444 (Sup.1916).

Said A.L.R. article further states:

"* * * Thus, it has been held in New Hampshire that while there is no duty to provide safe conditions for a known trespasser, *there is a duty to refrain from negligent conduct toward such a person,* or, in other words, the owner or occupier of property is liable for negligent or careless acts of intervening force after the presence of the trespasser becomes known." (Citing authorities) (Emphasis supplied.)

The foregoing is sufficient to demonstrate the predominance of decisions which, under one theory or another, recognize a real distinction between liability for maintaining safe premises and liability for overt acts of negligence during the known presence of a licensee on the premises.

Reason and logic call for such a distinction in order to promote consistency with rulings in other similar and

related matters. For example, in Tennessee an autoist has the same duty to a social guest in his automobile as to a stranger. Should the rule be otherwise merely because the automobile is on the premises of the autoist?

If an autoist negligently closes a door upon the hand of a guest in his automobile, should his liability be any different whether the automobile is situated in the owner's driveway or a few feet away at the curb outside his premises?

If the owner or controller of premises is to be immune to liability for his negligent conduct which injures his guest, is the immunity to extend to the family of the host, or his other guests? What moral or reasonable ground can be found to permit a host to negligently injure his guest with impunity while others on the premises, who have no responsibility as a host are held to stricter liability for their conduct?

The great volume of judicial rationalization on the subject should be simply and briefly summarized in the rule that every human being is under a duty to exercise ordinary care to avoid injuring his fellow man, and that ordinary care varies with the circumstances of each case. Such a rule would free the jury to judge the conduct of the defendant and his liability therefor in the light of each case, under general instructions from the court.

Reason and logic also call for a recognition of a distinction between trespassers, licensees by acquiescence, licensees by general or implied invitation, licensees by specific invitation, and licensees who by invitation enter the premises in the company of the host. Surely, a social guest who is led into the premises by his host is entitled to a higher degree of consideration from the host and the

courts, than an unwanted trespasser or one who has acquired a license by passive acquiescence.

In Worsham v. Dempster, 148 Tenn. 267, 251 S.W. 52 (1923), the Supreme Court dismissed for lack of invitation and contributory negligence, but said:

"It is not claimed that the plaintiff was there by invitation, either express or implied, from the defendants, or Clark & Jones, and they were the only persons who had the possession and control of said building.

"The rules of law applicable in such a case and approved by this court are thus stated in Chattanooga Warehouse & Cold Storage Co. v. Anderson, 141 Tenn. 288, 293, 210 S.W. 113, 154.

'The general rule is succinctly, but accurately, stated by Mr. Cooley in his work on Torts (pages 604, 607), and approved by the supreme court of the United States in Bennett v. L. & N. Railroad Co., 102 U.S. 577, 26 L.Ed. 235, 236 as follows:

" ' "When one expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." ' " 148 Tenn., p. 275, 255 S.W., p. 54 (Emphasis supplied.)

In Clapp v. La Grill, 103 Tenn. 164, 52 S.W. 134 (1889), plaintiff fell through a grating on defendant's property adjoining a sidewalk. The Supreme Court said:

"* * * Where the owner of land expressly or by implication invites a person to come upon his land, he can

not permit anything in the nature of a snare to exist thereon which results in injury to the person who avails himself of the invitation, and who at the time is exercising ordinary care, without being answerable for the consequences. If, however, he gives but a bare license or permission to cross his premises, the licensee takes the risk of accident in using the premises in the condition in which they are. * * * '' 103 Tenn., pp. 171-173, 52 S.W., p. 136.

In Clapp v. La Grill, the question of whether plaintiff was an invitee was held to be for the jury.

In Frederick v. Philadelphia Rapid Transit Co., 337 Pa. 136, 10 A.2d 576 (1940), the reasonable and humane rule is well stated thus:

"Even a trespasser, however, is not a pariah. It is true that, unless and until the property owner or the operator * * * becomes apprised of his presence, no duty in regard to the trespasser's safety arises * * * but *when the owner or operator is put on guard as to the presence of the trespasser, the latter immediately acquires the right to proper protection under the circumstances.*" (citing authorities)

* * * * * * *

"The legal obligation to trespassers has been traditionally stated to be the avoidance of wilful or wanton negligence. 'Wilful negligence' is an obvious misnomer. 'Wanton negligence', as distinguished from ordinary negligence, is characterized by a realization on the part of the tortfeasor—or at least what would cause such a realization to a reasonable man—of the probability of injury to another, and by a reckless disregard never-

theless, of the consequences. As applied to the type of cases of which the present is an example, it is not wanton negligence to fail to use care to discover the presence of an unanticipated trespasser, but *it is wanton negligence,* within the meaning of the law, *to fail to use ordinary and reasonable care to avoid injury to a trespasser after his presence has been ascertained."* (Citing authorities) 10 A.2d, p. 578 (Emphasis supplied.)

There is one more reason why the decision of this Court should be otherwise. The act of the defendant in operating an overhead door where it would strike her guest might, under the circumstances, amount to such *wilful* conduct as would render her liable under all of the decisions. The determination of such wilfulness was properly for the jury.

In all deference and respect to the majority, the disposition of this appeal should not follow the single Florida decision in *Abercrombie,* supra, but should follow the Washington decision of Potts v. Amis, supra, and the considerable number of other decisions in agreement therewith. This case should be reversed and remanded for submission of the issues to a jury.