JAMES C. RAMBO, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.—472 S.W.2d 911.

August 4, 1971.

Certiorari Denied by Supreme Court October 18, 1971.

O. H. Wilson and Max E. Wilson, Mountain City, W. H. Ballard, II, Welch, W. Va., for plaintiff in error.

David M. Pack, Attorney General, W. Collins Bonds, Assistant Attorney General, Nashville, Lewis W. May,

District Attorney General, Mountain City, for defendant in error.

MITCHELL, J.   The defendant James C. Rambo was tried in the Criminal Court of Johnson County, Tennessee, on March 2, 1970 upon an indictment charging him with assault with an automobile with intent to commit murder in the first degree upon Millard Tester on the 21st day of May, 1969. The jury found the defendant guilty of assault and battery upon which the trial judge Honorable David Torbett imposed a fine of $50.00 and a jail sentence of eleven months and twenty-nine days.

The defendant filed a motion for a new trial which was heard and overruled, and an appeal was perfected and errors assigned.

The facts which were apparently accepted by the jury and the trial judge showed that on the 21st day of May, 1969 Millard Tester was a policeman in Mountain City, Tennessee. That about 2:00 or 2:30 A.M. he was in the performance of his duty making his rounds and went to check whether the overflow was spilling over at the reservoir above the high school, within the city limits. He spotted a car sitting off the side of the road out there. The car was a 1967 model Galaxie 500 red, which was stipulated to be the car of the defendant.

The officer's car was plainly marked as an official police vehicle, "POLICEMAN" and a blue light on top.

Officer Tester drove around in front of defendant's car to check the car and occupants. There was one boy out of the car and one sitting under the steering wheel. The one

on the outside jumped into the car. The officer opened the door of the police car preparatory to getting out and stepped one foot out and had about stood up when the defendant's motor was started, his motor raced and the car started toward Officer Tester, who to avoid being struck withdrew into his car and in closing the door of his car it caught his ankle. Then the defendant's car missed the door of Tester's car but hit it behind the door bending the fender and bumper.

This lane where the cars were was rather narrow but there were several "pull-out" places.

When the defendant's car struck the police car it hung onto the bumper and pulled it a short distance. The starter of defendant's car was cranking, it had stalled. Officer Tester ran to the defendant's car, opened the door, and said, "Mister, what's the matter with you? You tried to run over me", and the defendant said, "A policeman scares me."

The officer ordered the two boys out in front of his car where he could get a good view of them by the headlights. They kept looking at one another trying to draw the officer's attention.

The defendant seized the officer's wrist and was trying to wring the gun out of his hand and the other boy that was with him came running up to help him. The officer struck one of them with his flashlight and he ran. The officer ordered him to halt and fired a shot up in the air. The officer was unable to arrest the defendant who fled. The two men proved to be brothers, Claud Rambo and

James C. Rambo. The officer said at the trial he did not know the whereabouts of Claud Rambo. He caused a warrant to be issued for the defendant on this charge.

Officer Tester testified on cross-examination they were not trying to pass him, they were trying to kill him. That his police car had been driven over to the right and they could have passed him easily. Tester said, ''I opened the door and started to get out they pulled their headlights on and started the motor and ribbed it up and started toward me.'' That he pulled the door of his car upon his ankle and the defendant's car hit the fender and bumper of the police car and the damage was approximately fifty-five dollars. That this all happened in a matter of a few minutes. That Claud Rambo was also indicted but he was not driving the defendant's automobile.

The defendant did not testify nor offer any proof.

The errors assigned on behalf of the defendant have been summarized and re-stated by the Attorney General in his brief as follows:

(1) The evidence preponderates against the guilt of the accused and in favor of his innocence.

(2) The punishment imposed upon the defendant for the crime for which he was convicted was excessive, unjust, and unreasonable.

In reviewing the evidence under assignment (1) we are governed by the rule that the verdict of the jury when approved by the trial judge accredits the testimony

for the State and resolves all conflicts in favor of the theory of the State. Such a verdict has displaced the presumption of innocence and has created a presumption of guilt. Here the accused has the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. Haas v. State, Tenn.Cr.App., 455 S.W.2d 634; White v. State, 210 Tenn. 78, 356 S.W.2d 411 (1962); Anderson v. State, 207 Tenn. 486, 495, 341 S.W.2d 385 (1960); Cooper v. State, 123 Tenn. 37, 138 S.W. 826 (1909); Bacon v. State, 215 Tenn. 268, 385 S.W.2d 107.

■ This Court will not reverse a conviction upon the facts unless the evidence clearly preponderates against the verdict of the jury and in favor of the innocence of the defendant. We may review the evidence only to determine whether it preponderates against the verdict and in favor of the innocence of the defendant. Gulley v. State, 219 Tenn. 114, 407 S.W.2d 186; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173.

■ The defendant contends that the trial judge did not instruct the jury on the law of assault and battery or simple assault, that he merely charged as to the punishment for these misdemeanors. With this we cannot agree.

The trial judge in his charge to the jury correctly defined the various degrees of felonious assault included in the indictment and then said this to the jury:

"An assault is an attempt to do violence to another, with the present means of carrying the attempt into affect. Threats, vulgar or abusive language, are not sufficient to constitute an assault. There must be proof

of violence actually offered and within such distance as harm might ensue.''

"A battery is the least touch of another in a rude, angry or revengeful manner, and an assault is necessarily included in a battery.''

In Saunders v. State, 208 Tenn. 347, 345 S.W.2d 899, cited by the Attorney General in his brief, it was held:

"Ordinarily, intent to injure is the gist of an assault. Richels v. State, 33 Tenn. 606. A specific intent though to do an injury is not necessary to constitute assault and battery where the act complained of is malum in se but general malevolence or recklessness will suffice. King v. State, 157 Tenn. 635, 11 S.W.2d 904, 905. In the King case, this Court quoted with approval Clark & Marshall on Crimes, as follows:

'While there is very little authority on the question, there seems to be no good reason to doubt that a person may be guilty of criminal assault and battery if he intentionally does an act which, by reason of its wanton and grossly negligent character, exposes another to personal injury, and does in fact cause such injury. Throwing a stone in sport and striking another is an assault and battery.'

"The basic contention on this appeal is that there is no evidence of any intent to do injury. The intent necessary to constitute assault and battery is either an express desire upon the part of the accused to inflict the injury or it can be supplied as a matter of law from doing an act in such a reckless and wanton manner

that the natural and probable results thereof will be to inflict an injury. The factual situation as presented in each case is a question for the jury to determine whether or not there is either an express desire, or from the acts within themselves the intent is shown."

It may be that the defendant intended to run over, on or against the officer, Mr. Tester with intent to kill him or do him great bodily injury but the jury gave the defendant the benefit of the doubt on that issue and convicted him of assault and battery. We are of the opinion that the defendant acted in such a reckless and wanton manner and in disregard of the safety of the officer, in the manner in which he operated his automobile and that he was thereby guilty of assault and battery as was found by the trial jury.

Huffman v. State, 200 Tenn. 487, 292 S.W.2d 738 cited in the defendant's brief was a case where the defendant was convicted of assault with intent to commit voluntary manslaughter for unlawfully driving his automobile into and against an automobile occupied by the prosecution witnesses. There the indictment only charged assault and battery and the court held the case would have to be remanded for a jury to fix the punishment for assault and battery.

By assignment of error (2) the defendant contends the punishment imposed upon the defendant was excessive.

The accused committed an assault and battery upon the officer by recklessly driving his automobile against the police car, at a time when the officer was in the act of

getting out of his car and caused the door to be closed on his ankle, and did thereafter commit an assault and battery on the officer by twisting his arm in an effort to disarm him. The police car was clearly marked P-O-L-I-C-E-M-A-N and had a dome light on the top of it so that the defendant could hardly escape the knowledge that it was a police car and that the man in charge of it was a police officer in the performance of his duty. We are of the opinion that such conduct deserves severe punishment.

The jury found the defendant James C. Rambo guilty of assault and battery and left the punishment to the discretion of the trial judge who according to the Bill of Exceptions imposed a fine of $50.00 and a jail sentence of 11 months and 29 days. The punishment imposed by the trial judge was within the legal limits of the law and within his discretion. We hold that the trial judge who heard all of the evidence and saw the parties and the witnesses and was charged with the duty and responsibility of fixing the punishment was better qualified to determine that question than any other person or authority.

We are unable to find that he abused his discretion in fixing the punishment as he did.

The Technical Record fails to show that a fine of $50.00 was imposed upon the defendant but the Bill of Exceptions does show that the $50.00 fine was adjudged against him, together with a jail sentence of eleven months and twenty-nine days, therefore we correct the judgment to show the entry of a $50.00 fine in addition to the jail sentence.

The defendant also contends that the trial judge erred in overruling his motion made at the close of all the proof to direct the jury to acquit the defendant. We find no merit in this contention because the facts show that it was a jury question and that to have directed a verdict of not guilty on this evidence would have been an unwarranted assumption of authority by the trial judge.

T.C.A. Section 40-2529 provides:

"In a criminal prosecution the trial judge shall direct the jury to acquit the defendant if at the close of the evidence for the prosecution, or at the close of all the evidence, the court is of the opinion that the evidence is insufficient to warrant a conviction."

In Ridley v. Spence, 61 Tenn.App. 571, 456 S.W.2d 846 (1970), the Tennessee Court of Appeals restated the general rules relating to motions for directed verdicts:

"As has been held in numerous cases in this State, the rule for determining a motion for a directed verdict requires the trial Judge and the reviewing Court on appeal to look at all of the evidence, to take the strongest legitimate view of it in favor of the opponent of the motion, and to allow all reasonable inferences from it in his favor; to discard all countervailing evidence, and if then, there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied." 456 S.W.2d at 848.

Although Ridley v. Spence, *supra,* was a civil case, we are of the opinion that the same general principles are

applicable to motions for directed verdicts in criminal cases.

We find the evidence does not preponderate against the verdict and in favor of the innocence of the defendant.

The assignments of error are overruled and the judgment is affirmed.

Russell and Galbreath, JJ., concur.

Galbreath, J. (concurring).

I concur in Judge Mitchell's opinion and would point out that the general law on battery includes the following from 6 C.J.S. Assault and Battery sec. 70:

It is essential to the offense of battery or assault and battery that there be a touching of the person of the prosecutor, or of something so intimately associated with, or attached to, his person as to be regarded as a part thereof.

This touching, however, need not be in the form of a blow but may consist of any sort of contact; it may include every touching or laying hold, however slight, of another or his clothes in an angry, revengeful, rude, insolent, or hostile manner; or the direct or indirect application of force either by the aggressor himself, or by some substance or agency placed in motion by him. Hence it may consist in the beating, striking, or whipping of a person, striking him with a thrown missile, or pouring or throwing vitriol or other corrosive chemical upon him. It may also take the form

of merely pushing or shoving him, or detaining him, or snatching or wrestling something from his possession. It may be a battery to strike a person with an automobile, or a horse and buggy, or to drive a horse against him. The contact may have been with the clothes of the prosecutor or with something carried by him. It has even been held that a battery may be committed by striking or seizing a horse which complainant is riding or driving, although there is authority of equal weight to the contrary.

See also Reese v. State, 3 Tenn.Cr.App. 97, 457 S.W.2d 877.

When a heavy automobile is driven into the side of another automobile in which a person is seated, a physical force is applied to that person's body, sometimes in a devastating manner. In such a circumstance it may be that there is, in contemplation of law, the unlawful touching of the person needed to constitute a battery. Judge Mitchell's opinion places us in the position of approving this theory; and while I have some hesitation in doing so, I join with him in this logical result.